VULCAN-CINCINNATI, INC., APPELLANT, *v.* UNITED STEELWORKERS OF AMERICA ET AL., APPELLEES.[*]

(No. 8833—Decided December 12, 1960.)

*Messrs. Taft, Stettinius & Hollister, Mr. J. Mack Swigert, Mr. Robert G. Stachler, Messrs. Steer, Strauss & Adair* and *Mr. Robert J. White,* for appellant.

*Messrs. Smith & Latimer* and *Mr. Robert I. Doggett,* for appellees.

[*]Motion to certify the record overruled, April 19, 1961.

Matthews, P. J.  This action was commenced as an action for an injunction to restrain the defendant United Steelworkers of America, AFL-CIO, an unincorporated association, and certain of its members, from carrying on a strike, with all its incidents, against the plaintiff, a corporation, in alleged violation of the terms of a collective bargaining agreement.

A temporary restraining order was issued enjoining the defendants from continuing all the alleged acts, contrary to the terms of the collective bargaining agreement.

While this temporary restraining order was in full force and effect the defendants filed an answer and cross-petition.  In the answer, defendants admitted the existence of the collective bargaining agreement, but denied that they had in any way supported, encouraged, taken part in or in any way supported work stoppage contrary to the agreement.

By way of cross-petition, the defendants set forth many of the provisions in the collective bargaining agreement relating to the arbitration of disputes arising upon the discharge of employees by the plaintiff.  By section 9 of the collective bargaining agreement it is provided, in part, that:

"In the event an employee shall be suspended or discharged from his employment and he believes he has been unjustly dealt with, such discharge or suspension case shall follow the procedure outlined in section 7—Adjustment of Grievances—omitting the first step thereof and starting the second step within forty-eight (48) hours of the time of suspension or discharge, Saturdays and Sundays excluded.  Should it be determined by the fifth step of the grievance procedure that the employee has been suspended or discharged unjustly, the company shall reinstate the employee and pay full compensation for all time lost.  It is the intent that all such cases of discharge should be taken up and disposed of within five (5) days of the date of discharge."

It will be noted that section 9 incorporates a part of section 7.  The pertinent part of section 7 is as follows:

"Section 7 A—Should differences arise between the company and union as to the meaning or application of the provisions of this agreement, or should any local trouble of any kind arise in the plant, there shall be no lockouts, strikes, work stoppages or slowdowns engaged in by the parties hereto, but

the matter shall be settled immediately in the following manner and order:

"1. between the aggrieved employee and/or member or members of the grievance committee and the foreman of the department involved;

"2. between the aggrieved employee and/or a member or members of the grievance committee designated by the union, and the superintendent of the department;

"3. between the aggrieved employee and/or a member or members of the grievance committee, designated by the union, and the personnel manager; before this step the subject matter of the grievance shall be reduced to writing, signed by the aggrieved employee and/or the grievance committee, and presented to the personnel manager;

"4. between representatives of the international union and the representatives of the executives of the company;

"5. in the event that the matter shall not have been settled satisfactorily, it shall then be appealed to an impartial umpire to be appointed by mutual agreement of the parties hereto. If the parties cannot agree to an arbitrator the matter will be presented jointly to the American Arbitration Association. The expense and compensation incident to the services of the umpire shall be paid jointly by the company and the union. The decision of the umpire shall be final and binding upon the parties hereto.

"It is further agreed that notification of intent to appeal any grievance from step 3 to step 4 or from step 4 to step 5 of this procedure shall be given within thirty-one (31) calendar days of a decision at either of these steps, otherwise the grievance shall be considered settled on the basis of the decision made at the last step and shall not be subject to further appeal."

It is alleged in the cross-petition that:

"A controversy has arisen between the parties in that on or about December 14, 1959, plaintiff discharged two of its employees, Walter E. Scott and Joseph C. Huesman, without what defendant union considers to be proper cause, that plaintiff's discharge of said employees was contrary to previous express settlements entered into by plaintiff and defendant." It is alleged further that "Plaintiff has acted in bad faith and has

failed, neglected and refused to perform the terms of said arbitration stipulation and agreement on its part to be performed, although requested to do so by defendant, in failing and refusing to discuss or arbitrate with defendant the aforesaid controversy.''

There is a general allegation that the defendant has performed all conditions preliminary and precedent to arbitration.

The prayer is that the court order the plaintiff to proceed to arbitration.

We do not find any answer to this cross-petition, either in this court or in the Common Pleas Court, but there was a trial in that court and also a trial *de novo* in this court, by agreement, however, upon the record made at the trial in the Common Pleas Court, from which this appeal was taken. There does not seem to be any substantial dispute as to the facts, although there was much quibbling at the trial.

From the record, it appears that the usual operation of the plaintiff's manufacturing establishment was disturbed by some sort of a dispute existing between certain employees and the management. Whether it was authorized by the union of employees is not material. We are concerned here with the two employees—Scott and Huesman.

The disturbance at plaintiff's place of business had reached the point, and Scott's and Huesman's participation therein was such, that on December 14, 1959, Scott and Huesman were notified that they were discharged, effective on that date, assigning as the reason their participation in the disturbances at plaintiff's place of business. As already noted, Scott and Huesman thereupon, by the cross-petition, have demanded arbitration of the soundness of the basis of their discharge, or, in the language of the agreement, whether they were aggrieved by their discharge.

During the disturbance at plaintiff's place of business there were many conferences between representatives of the employees and representatives of the employer, and some of these conferences related to the status of Scott and Huesman. But nothing transpired that could be regarded as the institution of a complaint within 48 hours following December 14, 1959, or as constituting a waiver of any of the provisions of the collective bargaining agreement.

It must be conceded by the parties that in the absence of a statute no court—either law or equity—will attempt to order litigants to proceed to arbitrate a dispute. 3 American Jurisprudence, 906, Section 74.

By Section 2711.01, Revised Code, provision is made for the arbitration of controversies generally, and disputes between employers and employees are not excepted from its provisions.

There is no conflict between the state and the federal law on this subject. However, we think that in the event of such conflict, the federal law, being the supreme law, would be controlling, and the rights of the parties determined in accordance therewith.

Whatever right the cross-petitioners have to compel arbitration, and whatever duty the plaintiff is under, results from the contract into which the parties entered. There is, of course, no such duty at common law. The claim is that there is a contractual duty. We therefore look to the contract to determine whether, and under what circumstances, it imposes a duty upon the plaintiff, and whether the cross-petitioners have performed all things required of them in order to impose a duty upon the plaintiff.

We have already quoted the applicable provisions from the contract. It is patent that an elaborate system is set up for the handling of disputes involving the discharge of employees. It will be observed that the employee who conceived himself aggrieved is required to present his grievance to the superintendent of his own department in the first place and within 48 hours of the notice of his discharge. Then the next step was attended with more formality by reducing the complaint to writing and presenting it to the personnel manager; and the next step provided for a meeting between the international union and the executives of the employer; and then, and then only, is provision for agreement upon an arbitrator, and upon failure to agree upon an arbitrator, to submit the dispute to the American Arbitration Association.

Now it is clear that the cross-petitioners have not pursued this process, and as the time has expired, it is clear that they cannot comply.

It is urged that the decision of whether Scott and Huesman

are entitled to have this issue of whether they are entitled to arbitration should be made by the arbitrator himself and not by the court.

There is some authority on this subject. In fact, we find it embedded in the text of 56 Corpus Juris Secundum, 256, Section 28, where it is said: "The arbitration of a dispute between an employer and a labor union should comply with the requirements of the arbitration clause of the contract * * * under which it is conducted." And, at page 262, Section 28, of the same volume: "As a general rule there must be a compliance with the requirements of the contract * * * before an administrative proceeding * * * may be instituted thereunder." And, again, "Any requirement of the contract between the union and the employer * * * under which the administrative proceeding * * * is instituted, which is in the nature of a condition precedent, must be complied with before such a proceeding may be instituted before the Labor Relations Board. * * * A contract provision that a discharged employee may appeal to successive designated tribunals for a determination of his grievances, and have a reinstatement if the final decision of such tribunal sustains his contention, does not give him a right of action unless the tribunal finds that he was unjustly discharged, and, although there is authority to the contrary, the employee cannot properly complain * * * until he exhausts his remedy, before such tribunal * * *."

While the author had in mind a proceeding before the Labor Relations Board, we are unable to discover any reason why the same principle would be inapplicable to the situation before us. In fact, we know of no limitation to the principle that a person claiming to be aggrieved must himself have performed all the conditions precedent upon which his rights are predicated.

We think it will be conceded generally that parties can by express provision confer power upon an arbitrator to determine whether he has jurisdiction to pass upon his own jurisdiction as well as to pass upon the subject matter submitted, and, where the situation presents a debatable issue of jurisdiction, the arbitrator may pass upon it preliminarily. This results from the necessity, but where the arbitration agreement contains no express provision conferring such power, there is nothing from

which it could be implied, and the subject matter of the arbitration is definite, the decision becomes a matter of law for decision by the court. This is so stated in *McCarroll* v. *Los Angeles County Dist. Council of Carpenters,* 49 Cal. (2d), 45, 65, where it is said: ''The arbitrability of a dispute may itself be subject to arbitration if the parties have so provided in their contract. In this situation, the court should stay proceedings pending the arbiter's determination of his own jurisdiction unless it is clear that the claim of arbitrability is wholly groundless.''

In *Brass & Copper Workers Federal Labor Union* v. *American Brass Co.,* 272 F. (2d), 849, the decision is epitomized in this headnote:

''Union brought action against employer for specific performance under the National Labor Relations Act to compel arbitration under collective bargaining agreement. The United States District Court for the Eastern District of Wisconsin, K. P. Grubb, J., entered judgment dismissing the complaint on the merits, and the union appealed. The Court of Appeals, Hastings, Chief Judge, held that where collective bargaining agreement gave no indication of intended party to determine issue of procedural arbitrability, it was, in the first instance, for District Court to make the decision, and that where one article of collective bargaining agreement between employer and union provided that requests for arbitration in case of discharges for cause or disciplinary layoffs were required to be made in writing within 10 days after employer's final answer in writing to union, and another article specified a time limitation for submission to arbitration of 10 days following date when it was determined that parties could not agree, union's request for arbitration, which was made 13 days after receipt of employer's final answer, came too late, and action by union was properly dismissed.''

This case seems to be in all respects identical with the case at bar.

Stated in terms of legal liability, the rule is that unless the defendant in some way is in default, the plaintiff has no cause of action. In this case, before any action can arise in favor of the employees, the employer must be in default, and before it can be placed in default the entire process of arbitration must be ex-

hausted. And the initial step is expressly required to be taken within 48 hours of the time of suspension or discharge. That promptness in starting such process was of the essence is clear from a consideration that if such discharge or suspension should be held to be unjustified, the employees would be entitled to full pay from the time of discharge, and the employer would be obliged to pay the wages of the substitutes, and also subjected to the disruption of the even tenor of his business, resulting from the changing of employees.

In *General Electric Co. v. United Electrical Radio & Machine-Workers of America*, 300 N. Y., 262, the Court of Appeals of New York held that the union was not entitled to arbitration of a dispute relating to a pension plan voluntarily instituted by the employer, notwithstanding the existence of a collective bargaining agreement in which one of the provisions was that all disputes should be settled by arbitration. It is stated in the *Per Curiam* opinion:

"If, under the unambiguous terms of an agreement calling for arbitration, there has been no default, the court may not make an order compelling a party to proceed to arbitration. * * * If there is no real ground of claim, the court may refuse to allow arbitration, although the alleged dispute may fall within the literal language of the arbitration agreement."

See, also, *Application of Ketchum & Co., Inc.*, 70 N. Y. Supp. (2d), 476.

We are not unmindful that in *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U. S., 574, 578, Mr. Justice Douglas said that a collective bargaining agreement was more than a contract: "* * * it is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate. * * * The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry * * *."

But that new common law prescribes a procedure for the redress of grievances and a definite time limit as a part of the procedure, whereby the grievances set forth in the collective bargaining agreement could be asserted and redressed.

To summarize—our conclusion is that no matter how the thought is expressed—whether as a default on the part of the

employees, or as a contractual limitation of time, or as a contractual jurisdictional limitation, or as a fact upon which jurisdiction depends, or as a condition precedent—the fact finally emerges that it is incumbent upon the employees to start the grievance procedure within 48 hours of the discharge or suspension, and failing so to do, the employer is thereby released from any obligation, and that the court—not the arbitrator—has jurisdiction to so decide.

For these reasons, final judgment is rendered in this court for the plaintiff.

*Judgment for plaintiff.*

O'CONNELL, J., concurs.

LONG, J., dissenting. This is an appeal from a judgment of the Common Pleas Court of Hamilton County, wherein appellant was ordered to proceed to arbitrate a dispute involving the discharge of two employees of the appellee union. Section 7A of the agreement between the parties provides the methods or procedures by which differences between the company and the union shall be settled. Subdivision 2 of this section provides the manner of the disposition of the type of dispute we have here as follows: "the matter shall be settled immediately between the aggrieved employees [Scott and Huesman] and/or a member or members of the grievance committee designated by the union, and the superintendent of the department."

Section 9 of the agreement, after providing notice to the grievance committee of the discharge of an employee provides as follows: "In the event an employee shall be suspended or discharged from his employment and he believes he has been unjustly dealt with, such discharge or suspension case shall follow the procedure outlined in section 7—Adjustment of Grievances—omitting the first step thereof and starting the second step within forty-eight (48) hours of the time of suspension or discharge, Saturdays and Sundays excluded."

There is no dispute that various disorders took place at the plant of the company, and that because of the participation of Scott and Huesman, they were discharged first on December 8; reinstated on the same day; restored to "full rights" on Decem-

ber 11; suspended again on December 12 and finally discharged again on December 14. During all this time, various discussions were had between representatives of the employees and representatives of the company. While no formal notice in writing was given by the union, the evidence seems clear that for at least a week (December 8 to December 14) the company and the union were discussing the discharge of Scott and Huesman; the several discharges and reinstatements of these two employees is some evidence that the company considered that the union had performed under the agreement requiring 48 hours within which step two should follow step one, as provided in Section 9 of the agreement. I cannot agree that the evidence is conclusive of a default on the part of the employees; I cannot agree from the facts of this case that the 48-hour provision is a contractual limitation; and, further, it seems to me that the company waived its right to this defense by its participation in the negotiations touching the dispute in question. Having dealt with the aggrieved parties, the grievance committee and other union representatives, the company has chosen to consider compliance with the various steps outlined in Section 7, as merely procedural and not substantive. The decisions, it seems to me, indicate a policy to decide disputes of this kind through the machinery of arbitration, whenever possible, resolving doubts in favor of coverage by the arbitration agreement. *United Steelworkers of America* v. *Warrior & Gulf Navigation Co.*, 363 U. S., 574 (June 1960); *United Steelworkers of America* v. *American Mfg. Co.*, 363 U. S., 564 (June 1960).

It is the opinion of the writer that all the controversies raised in connection with the discharge of Scott and Huesman are arbitrable. This court should order a decree similar to the decree entered in the Court of Common Pleas.