**SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 47, Appellee,**

**v.**

**CLEVELAND NEIGHBORHOOD HEALTH SERVICES, INC., Appellant.**

[Cite as *Service Emp. Internatl. Union, Local 47 v. Cleveland Neighborhood Health Serv., Inc.* (1996), 77 Ohio App.3d 328.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 69388.

Decided April 8, 1996.

---

separate, R.C. 3105.171(E)(1) allows a trial court to secure a distributive award by placing a lien on such property.

_Gregory J. Lavelle,_ for appellee.

_Nicola, Gudbranson & Cooper_ and _Matthew T. Fitzsimmons,_ for appellant.

PORTER, Judge.

Respondent-appellant Cleveland Neighborhood Health Services, Inc. appeals from a summary judgment entered in favor of Service Employees International Union, Local 47, holding that the claim of employee Toronto Davis for union scale wages while he was a temporary employee was arbitrable pursuant to the collective bargaining agreement between the parties. We find merit in the appeal and remand the cause for entry of summary judgment in favor of the appellant.

Health Services is a nonprofit charitable corporation under Ohio law which provides primary medical and dental care to welfare recipients in the Cleveland area through the operation of Hough–Norwood Clinics. Local 47 represents the bargaining unit employees at Health Services pursuant to a collective bargaining agreement which provides a grievance and arbitration procedure for employment disputes.

In late 1990 and early 1991, Toronto Davis was unemployed. He sought a bargaining unit position as a receiving and distribution clerk at Health Services. There was no opening in bargaining unit positions for a receiving and distribution clerk at Health Services at that time. Nevertheless, he was hired in a nonbargaining unit position as a temporary, nonunion worker doing demolition work, cleanup, and general handyman work at the East 55th Street clinic, which was undergoing construction and renovation. Davis's wages ($6.50 per hour) were paid by Community Housekeeping Corporation, a corporation separate and distinct from Health Services, which had no collective bargaining agreement with Local 47. Davis was considered a temporary employee on loan from Community Housekeeping Corporation to Health Services for the duration of the construction project. Davis came to work for Health Services with the hope and expectation that he would be considered for a higher paying bargaining unit position when one opened up.

From January 31, 1991 until February 15, 1993, Davis was not a full-time employee of Health Services, was not employed as a bargaining unit receiving and distribution clerk, and was not a member of Local 47.

On February 15, 1993, Davis became a full-time employee as a receiving and distribution clerk and joined Local 47. Davis did not apply for the receiving and distribution clerk position until December 1992.

On December 7, 1993, Davis filed a grievance alleging that he was owed union scale wages for the period from January 31, 1991 through February 15, 1993 when he was a temporary employee. Subsequently, on April 24, 1994, a demand for arbitration under the collective bargaining agreement was made by Local 47. Health Services refused to submit to grievance procedures or arbitrate Davis's

claim because, during the period between January 31, 1991 and February 15, 1993, Davis was a temporary employee, not represented by Local 47, and was not covered by the collective bargaining agreement and its arbitration procedure. Article I, Recognition, Section 2 of the collective bargaining agreement provided:

"Hereinafter, the term 'employee' will include all of those employees within the bargaining unit represented by the Union as a result of the Specification of this Article. The term 'employee' shall not include those employees excluded from the bargaining unit, part-time employees regularly scheduled to work twenty (20) hours per week or less and temporary employees."

Local 47 filed a complaint/petition to compel arbitration (R.C. 2711.03) in the court of common pleas concerning Davis's compensation and benefits between January 31, 1991 and February 15, 1993. The parties filed cross-motions for summary judgment. An evidentiary hearing was held on the motions on June 13, 1995, at which testimony and exhibits were presented.

In addition to the facts previously noted, Davis testified that he did not have a valid Ohio driver's license until late 1992 due to a DUI suspension. A valid Ohio driver's license was a requirement for the receiving and distribution clerk job.

On July 6, 1995, the trial court granted Local 47's motion for summary judgment, denied Health Services' motion and ordered the matter to arbitration.

This timely appeal ensued.

We will address appellant's assignments of error together as they are both related to whether the court determined the issues to be arbitrable:

"I. The trial court committed reversible error, as a matter of law and to the substantial prejudice of Cleveland Neighborhood Health Services, Inc. ('Health Services'), by holding that the grievance and arbitration procedure of the collective bargaining agreement between Health Services and the union applied to a retroactive claim for compensation of an indisputably temporary employee, whom the collective bargaining agreement expressly did not cover but rather excluded, and by ordering that this dispute be submitted to arbitration.

"II. Because it arrived at the erroneous legal conclusion on the threshold question of the arbitrability of this dispute, the trial court erred, as a matter of law and to the substantial prejudice of Health Services, by granting the union's motion for summary judgment, and ordering that a dispute expressly excluded from the scope of the collective bargaining agreement must be arbitrated under the arbitration procedure of a legally inapplicable collective bargaining agreement."

Respondent contends the trial court erred as a matter of law in granting summary judgment in favor of petitioner on his petition to compel arbitration.

Under Civ.R. 56, summary judgment is proper when:

"(1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is· entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made." *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380; *Temple v. Wean United, Inc.·* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 472, 364 N.E.2d 267, 274.

It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988),· 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 139–141.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc., Inc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

This court reviews the lower court's granting of summary judgment *de novo.* *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("[W]e review the judgment independently and without deference to the trial court's determination"). An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24, 26; *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 741, 607 N.E.2d 1140, 1144.

The fundamental issue on this appeal is whether the parties, Health Services and Local 47, agreed in their collective bargaining agreement to arbitrate disputes relating to compensation for temporary employees such as Davis. The parties may of course agree that the arbitrability of disputes may be submitted to the arbiter in the first instance. But in the absence of such a provision, arbitrability of disputes is a question of law that must be decided by

the courts. *Park–Ohio Industries, Inc. v. Atwood Resources* (Feb. 15, 1990), Cuyahoga App. No. 58142, unreported, 1990 WL 14133. It then becomes a question as what was the intent of the parties under the arbitration agreement. See *Ervin v. Am. Funding Corp.* (1993), 89 Ohio App.3d 519, 521, 625 N.E.2d 635, 637 ("The issue of whether a controversy is arbitrable under an arbitration provision of a contract is a question of law for the court to decide upon an examination of the contract"); *Divine Constr. Co., Inc. v. Ohio–American Water Co.* (1991), 75 Ohio App.3d 311, 316, 599 N.E.2d 388, 391 ("[A] party cannot be compelled to arbitrate any dispute which he has not agreed to submit to arbitration. * * * The scope of an arbitration clause, that is whether a controversy is arbitrable under the provisions of a contract, is a question for the court to decide upon examination of the contract").

In an analysis of the relevant question of arbitrability in the labor-management context, the Supreme Court held:

" '[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.' * * *

"[T]he question of arbitrability—whether a collective bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *AT&T Technologies, Inc. v. Communications Workers of Am.* (1986), 475 U.S. 643, 648–649, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648, 655–656, citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.* (1960), 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409. And even more recently: "Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clea[r] and unmistakabl[e]' evidence that they did so." *First Options of Chicago, Inc. v. Kaplan* (1995), 514 U.S. ——, ——, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985, 990.

The pertinent arbitration provision at issue here states:

"ARTICLE V

"GRIEVANCE AND ARBITRATION PROCEDURE

"A formal grievance procedure has been established to provide a means for employees to bring problems and complaints concerning their well-being at work to the attention of management. Day-to-day problems shall normally be adjusted between an employee and his immediate supervisor on an informal basis.

"Section 1. A grievance is defined as any dispute between an employee and the Employer concerning the meaning, interpretation or application of the expressed terms and provisions of this agreement which cannot be settled informally."

A four-step grievance procedure was provided for with the ultimate process resulting in reference to arbitration. Article V, Section 3 concludes:

"The arbitrator at all times shall be governed wholly by the expressed terms of this Agreement in reaching his decision and shall have no power or authority to modify or change this Agreement in any respect or to add or subtract from its terms. The decision of the arbitrator shall be final and binding on the Employer, the Union and the employee."

 The arbitration agreement at hand does not call for the issue of arbitrability to be determined by the arbitrator; therefore, the issue is properly left for the trial court to decide. *Cleveland Police Patrolmen's Assn. v. Cleveland* (1994), 95 Ohio App.3d 645, 651, 643 N.E.2d 559, 563; *Springfield Local Assn. of Classroom Teachers v. Springfield Local School Dist. Bd. of Edn.* (1987), 37 Ohio App.3d 167, 168, 525 N.E.2d 27, 28–29; *Vulcan–Cincinnati, Inc. v. United Steelworkers of Am.* (1960), 113 Ohio App. 360, 366, 17 O.O.2d 386, 390, 173 N.E.2d 709, 712–713. While there is a strong presumption in favor of arbitrability, a party cannot be compelled to arbitrate a dispute which is not part of an arbitration agreement. *Stocker v. Castle Inspections, Inc.* (1995), 99 Ohio App.3d 735, 737, 651 N.E.2d 1052, 1053; *Gibbons–Grable Co. v. Gilbane Bldg. Co.* (1986), 34 Ohio App.3d 170, 517 N.E.2d 559.

All the witnesses at the evidentiary hearing conceded that Davis was hired and classified as a temporary employee at all times up until February 15, 1993, when he took a bargaining unit position and became a member of Local 47. Davis argued that, although he was classified as a temporary worker, he did the work of a bargaining unit receiving and distribution clerk. Article I, Section 2 of the collective bargaining agreement, however, unambiguously excluded Davis as a temporary worker from the definition of an "employee" to whom the collective bargaining agreement—and its arbitration procedure—applied:

"Hereinafter, the term 'employee' will include all of those employees within the bargaining unit represented by the Union as a result of the Specification of this Article. The term 'employee' shall not include those employees excluded from the bargaining unit, part-time employees regularly scheduled to work twenty (20) hours per week or less and temporary employees."

As a temporary worker, Davis, under Article I, Section 2, was not defined as an "employee" within the bargaining unit represented by Local 47. In fact, he was expressly excluded. Davis's retroactive claim for additional compensation under the collective bargaining agreement covered a time period when he was a temporary employee, not a member of the collective bargaining unit and, thus, not subject to the arbitration procedure of the collective bargaining agreement.

The trial court's opinion noted that the union argued that the collective bargaining agreement limits the use of temporary employees to a ninety-day period. The provision to which the trial court referred states as follows:

"Section 5. When vacancies in the bargaining unit occur, or new jobs are created within the bargaining unit, the Employer shall post a notice of the opening or openings, stating the job classifications, a brief description of the work to be performed, the qualifications required to perform the job, the rate of pay and the time bidding will be closed. Such notice shall remain posted five (5) consecutive working days counting as the first such day the day following posting.

" * * *

"In order to provide continuity of service while filling a vacancy or a new job, the Employer reserves the right to fill openings and make transfers on a temporary basis, not to exceed ninety (90) calendar days, pending the selection of an employee for the job under these provisions."

Article XX, Section 5 applies to vacancies or new positions created within the bargaining unit. The ninety-day provision applies to workers placed into a bargaining unit position while the employer finds a permanent, unionized employee. This section does not apply to Davis. Davis was not hired to fill a vacancy or new position in the bargaining unit. He was hired as a nonunion demolition/handy man to be used solely on the construction project. The temporary cleanup position Davis filled was not a bargaining unit position described in the collective bargaining unit and his wages were not subject to the agreement. Davis's pay came from a grant given to Health Services to fund the remodeling of the OB/GYN unit of the 55th Street center. The ninety-day temporary worker clause had no application to the employment of Davis prior to February 15, 1993, at which time he acquired the bargaining unit position.

Therefore, since Davis was not an "employee" as defined by the collective bargaining agreement and was not a union member, his grievance was not covered by the arbitration clause and the parties were not obligated to arbitrate the issue.

Based on the foregoing discussion, we sustain the respondent's assignments of error.

The judgment is reversed and the cause is remanded for entry of summary judgment in favor of appellant Cleveland Neighborhood Health Services, Inc.

*Judgment reversed*
*and cause remanded.*

Spellacy, P.J., and Blackmon, J., concur.