[Cite as *Niles Edn. Assn. v. Niles City School Dist. Bd. of Edn.*, 2020-Ohio-6804.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| NILES EDUCATION ASSOCIATION, OEA/NEA, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellants, | : | |
| - vs - | : | **CASE NO. 2019-T-0081** |
| NILES CITY SCHOOL DISTRICT BOARD OF EDUCATION, | : | |
| Defendant-Appellee. | : | |

Civil Appeal from the Trumbull County Court of Common Pleas, Case No. 2018 CV 02003.

Judgment: Reversed and remanded.

*Ira J. Mirkin, Richard T. Bush,* and *Jeffrey J. Geisinger,* Green, Haines, Sgambati, Co., LPA, 100 Federal Plaza East, Suite 800, P.O. Box 849, Youngstown, Ohio 44501-0849 (For Plaintiffs-Appellants).

*John E. Britton* and *Robert J. McBride Sr.*, Ennis Britton Co., LPA, 6000 Lombardo Center, Suite 120, Cleveland, Ohio 44131 (For Defendant-Appellee).

MARY JANE TRAPP, J.

{¶1} Appellants, Niles Education Association, OEA/NEA (the "Association"), and Christopher Chieffo ("Mr. Chieffo"), appeal the judgment of the Trumbull County Court of Common Pleas denying their motion for summary judgment and granting the cross-motion for summary judgment filed by appellee, Niles City School District Board of Education (the "Board").

{¶2} The Association and Mr. Chieffo argue that the trial court erroneously determined that Mr. Chieffo's grievance challenging his "disciplinary dismissal" was not subject to arbitration pursuant to the collective bargaining agreement between the Association and the Board.

{¶3} After a careful review of the record and pertinent law, we find as follows:

{¶4} (1) Based on the language of the grievance and the allegations in the amended complaint, the issue before us is whether Mr. Chieffo's grievance alleging that the Board violated, misinterpreted and/or misapplied the agreement when it initiated termination proceedings and suspended him without pay pending termination at the January 18, 2018 school board meeting without just cause is arbitrable.

{¶5} (2) Mr. Chieffo's grievance is within the scope of the arbitration provision, since it alleges that the Board violated, misinterpreted, and/or misapplied specific provisions of the agreement. Therefore, a presumption in favor of arbitration arises.

{¶6} (3) The Board has not overcome this presumption based on an express exclusion in the agreement or other forceful evidence from the bargaining history.

{¶7} (4) The trial court erred by determining the issue of arbitrability based on the scope of a substantive provision in the agreement rather than the scope of the arbitration provision.

{¶8} Therefore, we reverse the judgment of the Trumbull County Court of Common Pleas and remand this matter for the trial court to enter summary judgment in favor of the Association and Mr. Chieffo, consistent with this opinion.

## Substantive and Procedural History

{¶9} The Association is the sole and exclusive representative of all bargaining unit teachers employed by the Niles City School District (the "District"). At all relevant times, the District employed Mr. Chieffo as a teacher, and he was a member of the bargaining unit. On May 20, 2016, the Board and the Association entered into a "Master Contract" effective September 1, 2016 through August 31, 2019 (the "Agreement").

{¶10} In October 2017, Mr. Chieffo reported off work via a request for sick leave. According to the Board, Mr. Chieffo attended a golf tournament on that day, where he coached the golf team of another school district.

### *Initiation of Contract Termination Proceedings*

{¶11} On January 17, 2018, the District's superintendent sent Mr. Chieffo written notice of a pre-termination hearing scheduled for the next day. The superintendent wrote that the hearing was "necessitated by [her] present intention to consider recommending to the Board * * * that it initiate proceedings to terminate [Mr. Chieffo's] contract with the District for good and just cause under Ohio Revised Code Section 3319.16" as a result of Mr. Chieffo's alleged "misuse and falsification of sick leave during the fall of the 2017-2018 school year."

{¶12} Prior to the pre-termination hearing, the Board's legal counsel sent to Mr. Chieffo's legal counsel a draft resolution fully specifying "the grounds for which consideration to recommend initiation of termination proceedings is based." Following the pre-termination hearing, the superintendent provided written notice of her intention to recommend to the Board that Mr. Chieffo's employment contract "be terminated for cause

3

in accordance with Section 3319.16 of the Revised Code" at a meeting scheduled for that evening.

{¶13} The Board subsequently adopted a resolution alleging that Mr. Chieffo "knowingly and willingly misused and falsified sick leave" in violation of (1) a specific Board policy; (2) article V (Leaves), section 5.02 (Sick Leave), subsections 5.024 and 5.025 of the Agreement; (3) R.C. 3319.141; and (4) the Ohio Department of Education's Code for Professional Conduct.

{¶14} Within the resolution, the Board suspended Mr. Chieffo's employment without pay or benefits, effective the next day, and indicated that it intended to initiate proceedings to consider the termination of Mr. Chieffo's employment contract "for good and just cause, in accordance with Section 3319.16 of the Revised Code."

{¶15} At this point, the matter proceeded simultaneously on parallel tracks pursuant to statutory and contractual procedures.

### Statutory Procedures

{¶16} The day after adopting the resolution, the Board sent a copy to Mr. Chieffo and his counsel and notified him that he had ten days from receipt to file a written demand for a hearing before either the Board or a referee.

{¶17} Mr. Chieffo sent a letter to the superintendent demanding a private hearing before a referee. He wrote that he did not waive and specifically reserved his rights "to grieve and arbitrate the termination through the collective bargaining agreement."

{¶18} The Board sent a request to the Superintendent of Public Instruction requesting a list of referees, scheduled a hearing date, and sent notice to Mr. Chieffo. The state provided a list of potential referees, and the parties mutually agreed on the

4

appointment of a particular referee. The parties agreed to hold the hearing in May 2018, which was later rescheduled for December.

### *Grievance Procedures*

{¶19} Meanwhile, the Association and Mr. Chieffo pursued the grievance procedures set forth in the Agreement.

{¶20} The informal procedure involves discussion with the grievant's immediate supervisor. The parties completed the informal grievance procedure, which did not resolve the matter.

{¶21} The formal grievance procedure consists of three steps. Step I involves the filing of a formal grievance and disposition by the grievant's immediate supervisor. Under step II, the grievant may submit the grievance for disposition by the superintendent. Under step III, the grievant may submit the matter to binding arbitration.

{¶22} Mr. Chieffo filed a formal grievance stating as follows:

{¶23} "The Board violated, misinterpreted and/or misapplied the Collective Bargaining Agreement including but not limited to the Preamble, Section B(5); Article 3, Section 3.03; Article 4, Section 4.01, and Article 6, Section 6.19, when the Board initiated termination proceedings and suspended without pay pending termination Christopher Chieffo, at the January 18, 2018 school board meeting, without just cause."

{¶24} Section B(5) of the preamble, which we refer to as the "management rights provision," provides that "[u]nless the Board agrees otherwise in this Contract, nothing in Chapter 4117 of the Revised Code impairs the right and responsibility of the Board to: * * * [s]uspend, discipline, demote, or discharge for just cause, or lay off, transfer, assign, schedule, promote, or retain employees[.]"

{¶25} Article III (Grievance Procedure), section 3.03 (No Reprisal), and article IV (NEA Rights and Privileges), section 4.01 (No Reprisals), which we refer to, collectively, as the "no reprisal provisions," both prohibit reprisal against an employee who files a grievance.

{¶26} Article VI (Employment Procedures), section 6.19 (Employee Discipline), which we refer to as the "employee discipline provision," states that "[a]n employee shall not be disciplined, reduced in rank or compensation, or demoted without just cause and compliance with all applicable provisions of this Contract."

{¶27} Following the completion of steps I and II, where Mr. Chieffo's grievance was denied, the Association gave notice of its intent to submit the grievance to binding arbitration under step III and filed a demand for arbitration with the American Arbitration Association (the "AAA").

{¶28} The parties' respective counsel and the AAA communicated to schedule dates for arbitration. The Board's counsel subsequently challenged the arbitrability of the grievance. The parties ultimately agreed to put both the statutory hearing and the arbitration on hold so that the Association and Mr. Chieffo could seek declaratory judgment in the trial court on the issue of arbitrability.

### Declaratory Judgment

{¶29} The Association and Mr. Chieffo filed an amended complaint against the Board in the Trumbull County Court of Common Pleas seeking a declaratory judgment that (1) Mr. Chieffo's grievance is substantively arbitrable; (2) the Agreement's grievance and arbitration procedure culminating in final and binding arbitration is the sole and

6

exclusive forum for their challenge to Mr. Chieffo's contract termination; and (3) therefore, that the procedure in R.C. 3319.16 is not applicable to Mr. Chieffo's contract termination.

{¶30} The Association and Mr. Chieffo filed a motion for summary judgment asserting that they were entitled to a declaratory judgment that Mr. Chieffo's grievance "asserting that there was no just cause to terminate [his] teaching contract" is subject to arbitration under the Agreement. The Board filed a cross motion for summary judgment, and both sides filed briefs in opposition.

{¶31} The trial court issued a judgment entry granting the Board's motion for summary judgment and denying the Association's and Mr. Chieffo's motion for summary judgment. The trial court found that termination is specifically excluded from the Agreement's disciplinary process that provides for arbitration and that, therefore, the termination process is reserved to the statutory provisions of R.C. 3319.16. The trial court concluded that Mr. Chieffo's grievance regarding his termination as a teacher is not an issue for arbitration under the Agreement.

{¶32} The Association and Mr. Chieffo appealed and present the following assignment of error:

{¶33} "The Lower Court Erred by Denying Plaintiffs-Appellants' Motion for Summary Judgment and Granting Defendant-Appellee's Cross Motion for Summary Judgment Based Upon the Erroneous Determination That Plaintiffs-Appellants' Grievance Challenging the Disciplinary Dismissal of Plaintiff-Appellant Christopher Chieffo Was Not Subject to Arbitration Under the Applicable Collective Bargaining Agreement."

**Standard of Review**

{¶34} In their sole assignment of error, the Association and Mr. Chieffo contend that the trial court erred in denying their motion for summary judgment and granting the Board's motion for summary judgment.

{¶35} Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶36. In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party. *Id*.

{¶36} We review de novo a trial court's order granting summary judgment. *Sabo v. Zimmerman*, 11th Dist. Ashtabula No. 2012-A-0005, 2012-Ohio-4763, ¶9. A reviewing court will apply the same standard a trial court is required to apply, which is to determine whether any genuine issues of material fact exist and whether the moving party is entitled to judgment as a matter of law. *Id*.

{¶37} In addition, the basis of the trial court's summary judgment order was that the parties' dispute was not arbitrable under the language of the Agreement. The arbitrability of disputes under a collective bargaining agreement is a question of law that must be decided by the courts. *Serv. Emps. Internatl. Union, Local 47 v. Cleveland Neighborhood Health Servs., Inc.*, 110 Ohio App.3d 328, 332-333 (8th Dist.1996). We review de novo the trial court's decision whether a controversy is arbitrable under a contract. *Verandah Properties, LLC v. Ullman Oil Co., LLC*, 11th Dist. Geauga No. 2019-G-0213, 2020-Ohio-1559, ¶15.

## Scope of Review

{¶38} The Association's and Mr. Chieffo's amended complaint and motion for summary judgment refer to Mr. Chieffo's "contract termination." On appeal, they use the terms "disciplinary dismissal" and "disciplinary action."

{¶39} As indicated, Mr. Chieffo's grievance alleged that the Board violated, misinterpreted, and/or misapplied the management rights provision, the employee discipline provision, and the no reprisal provisions by initiating termination proceedings and suspending Mr. Chieffo without pay pending termination without just cause.

{¶40} We construe the Association's and Mr. Chieffo's use of the above terms to encompass the Board's initiation of termination proceedings and its suspension of Mr. Chieffo without pay pending termination.

{¶41} Accordingly, the issue before us is whether Mr. Chieffo's grievance alleging that the Board violated, misinterpreted and/or misapplied the Agreement when it initiated termination proceedings and suspended him without pay pending termination at the January 18, 2018 school board meeting without just cause is arbitrable.

## Arbitrability

{¶42} We begin our arbitrability analysis by setting forth the applicable legal standards in Ohio regarding contractual arbitration provisions.

### *R.C. 2711.01(A)*

{¶43} The Ohio Arbitration Act is codified in R.C. Chapter 2711. R.C. 2711.01(A) provides, in relevant part, that "[a] provision in any written contract * * * to settle by arbitration a controversy that subsequently arises out of the contract * * * shall be valid,

9

irrevocable, and enforceable, except upon grounds that exist at law or in equity for the revocation of any contract."

{¶44} As the Supreme Court of Ohio has recognized, this language tracks the language of the Federal Arbitration Act, which provides, in relevant part, that "'a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract * * * shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Taylor v. Ernst & Young, L.L.P.*, 130 Ohio St.3d 411, 2011-Ohio-5262, ¶18, quoting 9 .S.C. 2. According to the court, R.C. 2711.01(A) expresses Ohio's strong public policy favoring arbitration, which is consistent with federal law supporting arbitration. *Id.*

### R.C. 4117.10(A)

{¶45} The Ohio Public Employees Collective Bargaining Act, codified in R.C. Chapter 4117, expresses a similar public policy. Specifically, R.C. 4117.10(A) states, in relevant part, as follows:

{¶46} "An agreement between a public employer and an exclusive representative entered into pursuant to this chapter governs the wages, hours, and terms and conditions of public employment covered by the agreement. If the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to matters that were the subject of a final and binding grievance procedure."

10

{¶47} In *State ex rel. Dayton Fraternal Order of Police Lodge No. 44 v. State Emp. Relations Bd.*, 22 Ohio St.3d 1 (1986), the Supreme Court of Ohio explained the Act's purposes and principles:

{¶48} "With the enactment of the Public Employees Collective Bargaining Act, Ohio adopted a comprehensive law to govern labor relations between public employees and their employers. * * * Until the Act went into effect, Ohio had no legal framework governing public-sector labor relations, and dealt with these issues on an *ad hoc* basis. * * * This produced an abundance of litigation and controversy, and, in fact, there were four hundred twenty-eight public employee work stoppages in Ohio between the years 1973 and 1980. * * * There were no guiding principles which public employers and employees could review in order to structure their conduct in dealing with terms and conditions of employment. Thus, the pre-Act system, if it can be called a system, was an ineffective and costly way to manage public-sector labor relations.

{¶49} "The new Act is a positive step forward. It sets forth firmly defined legal guidelines that minimize the possibility of public-sector labor disputes and provides for the orderly resolution of any disputes that occur. This law brings stability and clarity to an area where there had been none and will facilitate the determination of the rights and obligations of government employees and employers, and give them more time to provide safety, education, sanitation, and other important services. In addition, the Act assures that both public employers and employees will be accorded many of the same rights and be governed by many of the same responsibilities as employees and employers in the non-public sector. In now being treated relatively equally with employees in the private-sector, public employees have been removed from second-class citizenship." *Id.* at 4-5.

11

***Analytical Framework***

**{¶50}** According to the Supreme Court of Ohio, "'[a]n arbitration clause in a contract is generally viewed as an expression that the parties agree to arbitrate disagreements within the scope of the arbitration clause, and, with limited exceptions, an arbitration clause is to be upheld just as any other provision in a contract should be respected.'" *Academy of Medicine of Cincinnati v. Aetna Health, Inc.*, 108 Ohio St.3d 185, 2006-Ohio-657, ¶16, quoting *Williams v. Aetna Fin. Co.* 83 Ohio St.3d 464, 471 (1998).

**{¶51}** In *Council of Smaller Ents. v. Gates, McDonald & Co.*, 80 Ohio St.3d 661, 665 (1998) ("*Gates*"), the court set forth four principles for the determination of arbitrability, which the Supreme Court of the United States had developed in a line of cases known as the "*Steelworkers* Trilogy." *Id.* at 665.

**{¶52}** The first principle is that "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. * * * This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed to submit such grievances to arbitration.'" *Id.*, quoting *AT&T Technologies, Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648-649 (1986) ("*AT&T*").

**{¶53}** The second principle is that "'the question of arbitrability—whether a[n] * * * agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination. Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.'" *Id.* at 666, quoting *AT&T* at 649.

12

{¶54} The third rule is, "'in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.'" *Id*., quoting *AT&T* at 649.

{¶55} The fourth principle is that "'where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."'" *Id*., quoting *AT&T* at 650, quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-588 (1960).

{¶56} The party opposing arbitration may overcome the presumption of arbitrability if the agreement contains "'explicit language'" stating that the dispute is not subject to arbitration or by "'adduc[ing] the most forceful evidence to this effect from the bargaining history.'" *Id.* at 668, quoting *AT&T* at 654-655 (Brennan, J., concurring).

{¶57} Based on the foregoing authority, our first inquiry is whether Mr. Chieffo's grievance falls within the scope of the Agreement's arbitration provision. If the grievance does not fall within the provision's scope, then the grievance is not arbitrable.

{¶58} If it does, a presumption in favor arbitrability arises, and our second inquiry is whether the Board has overcome the presumption based on an express exclusion in the Agreement or other forceful evidence from the bargaining history.

### *Scope of the Arbitration Provision*

{¶59} In determining the scope of an arbitration clause, the Supreme Court of Ohio has stated that "the proper focus is whether the parties actually agreed to arbitrate the issue, * * * not the general policies of the arbitration statutes." *Taylor*, *supra*, at ¶20.

"[A]lthough any ambiguities in the language of a contract containing an arbitration provision should be resolved in favor of arbitration, the courts must not 'override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated.'" *Id.*, quoting *Equal Emp. Opportunity Comm. v. Waffle House,* 534 U.S. 279, 294 (2002).

{¶60} Article III of the Agreement is entitled "Grievance Procedure." Subsection 3.021 defines a "grievance" as "an alleged violation, misinterpretation, or misapplication of *any provision of this Contract.*" (Emphasis added.) Subsection 3.046 states that "[t]his grievance procedure shall be the exclusive means of resolving disputes concerning the alleged violation, misapplication, or misinterpretation of this Contract." Section 3.05 sets forth the grievance procedure. A grievant is permitted to submit a matter to binding arbitration as step III of the formal grievance procedure. The arbitrator's decision is "restricted to whether there is a violation, misinterpretation, or misapplication of this Contract * * *."

{¶61} Since Mr. Chieffo's grievance alleges that the Board's actions violated, misinterpreted, and/or misapplied the management rights provision, the employee discipline provision, and/or the no reprisal provisions, Mr. Chieffo's grievance fits within the scope of the arbitration provision, and a presumption in favor of arbitration arises.

*Specificity Requirement*

{¶62} The Board argues that the parties' dispute does not concern an alleged violation, misapplication, or misinterpretation of the Agreement. In support, the Board quotes a portion of R.C. 4117.10(A), which states that "where an agreement makes no specification about a matter, the public employer and public employees are subject to all

14

applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." According to the Board, the employee discipline provision does not specifically address the issue of teacher termination, and the meaning of the term "discipline" as used in the provision does not encompass employee termination.

{¶63} The statutory language does not support the Board's position. The Board's argument, which is based on only a portion of R.C. 4117.10(A), does not provide the proper context.

{¶64} The first sentence of R.C. 4117.10(A) provides that a collective bargaining agreement "governs the wages, hours, and terms and conditions of public employment covered by the agreement." The second sentence provides that "if the agreement provides for a final and binding arbitration of grievances, public employers, employees, and employee organizations are subject solely to that grievance procedure and the state personnel board of review or civil service commissions have no jurisdiction to receive and determine any appeals relating to *matters that were the subject of a final and binding grievance procedure*." (Emphasis added.) *Id*. The third sentence provides that "[w]here an agreement *makes no specification about a matter*, the public employer and public employees are subject to all applicable state or local laws or ordinances pertaining to the wages, hours, and terms and conditions of employment for public employees." (Emphasis added.) *Id*.

{¶65} Based on a plain reading of the statute, the third sentence's reference to "specification" applies to "matters that were the subject of" arbitration, i.e., the

15

agreement's substantive provisions covering "wages, hours, terms, and conditions of public employment," not to the arbitration provision.

{¶66} Interpreting the statute as imposing a specificity requirement for arbitrability would be inconsistent with the Ohio Public Employees Collective Bargaining Act's purpose of putting public employees on equal footing as those in the private sector. *See Dayton Fraternal Order of Police* at 5.

{¶67} Further, the Supreme Court of Ohio has not adopted this interpretation of R.C. 4117.10(A). As the Board notes, the Supreme Court of Ohio has applied R.C. 4117.10(A) in several cases. All of these cases involved the specificity of a collective bargaining agreement's substantive provisions covering "wages, hours, and terms and conditions of public employment," not arbitrability.

{¶68} For instance, in *State ex rel. Clark v. Greater Cleveland Regional Transit Auth.*, 48 Ohio St.3d 19 (1990), the issue was whether certain public employees were entitled to previously earned vacation credit pursuant to R.C. 9.44 when those employees were covered by a collective bargaining agreement that included a vacation-eligibility provision. *Id.* at 21.

{¶69} In *Naylor v. Cardinal Local School Dist. Bd. of Edn.*, 69 Ohio St.3d 162 (1994), the court considered whether contract-renewal and teacher-evaluation provisions in the parties' collective bargaining agreement prevailed over those procedures outlined in R.C. 3319.111. *Id.* at 164.

{¶70} In *Bashford v. Portsmouth*, 52 Ohio St.3d 195 (1990), the court considered whether the manner of a probationary police officer's termination was governed by state

16

and local law rather than the just cause termination procedures of a collective bargaining agreement. *Id.* at 196.

{¶71} And in *State ex rel. Ohio Assn. of Pub. School Emps./AFSCME, Local 4, AFL-CIO v. Batavia Local School Dist. Bd. of Edn.*, 89 Ohio St.3d 191 (2000), the court considered whether a collective bargaining agreement's provision addressing layoff and recall controlled over the protections and rights regarding salary, demotion, suspension, and termination afforded to nonteaching public school employees under R.C. 3319.018. *Id.* at 191-192, 196-197.

{¶72} Finally, the Board's position is inconsistent with the governing principles of arbitrability that the Supreme Court of Ohio has adopted. In determining whether the parties agreed to submit their dispute to arbitration, the court has instructed courts to "determin[e] the scope of the *arbitration clause* at issue." (Emphasis added.) *Academy of Medicine* at ¶16. It has not authorized courts to determine the scope of the substantive provisions of the collective bargaining agreement. In fact, the court has expressly stated that "'a court is not to rule on the potential merits of the underlying claims.'" *Gates* at 666, quoting *AT&T* at 649.

{¶73} As the Court of Appeals of New York has recognized, "[t]he question of the scope of the substantive provisions of the contract is itself a matter of contract interpretation and application, and hence it must be deemed a matter for resolution by the arbitrator." *Bd. of Edn. of Lakeland Cent. School Dist. of Shrub Oak v. Barni*, 49 N.Y.2d 311, 314 (1980). "That the substantive provisions of the contract which are the subject of the grievance may be ambiguous does not serve to bar arbitration. It is a function of the arbitrator, and not the courts, to resolve any uncertainty as to those substantive rights

and obligations of the parties." *In re Wyandanch Union Free School Dist. v. Wyandanch Teachers Assn.*, 48 N.Y.2d 669, 671 (1979).

{¶74} In a case involving the arbitrability of a teacher's grievance, the Supreme Court of Michigan aptly articulated the limited nature of our inquiry:

{¶75} "In deciding whether a dispute involving an issue of contract interpretation is arbitrable, a court should guard against the temptation to make its own interpretation of the substantive provisions of the contract encompassing the merits of the dispute. If the parties have agreed that an arbitrator shall decide questions of contract interpretation, the merits of the dispute are for the arbitrator.

{¶76} "Where a court finds itself weighing the pros and cons of each party's interpretation of substantive provisions of the contract, it is likely that the court has gone astray. The question for the court is not whether one interpretation or another is correct, but whether the parties have agreed that an arbitrator shall decide which of the competing interpretations is correct." *Kaleva-Norman-Dickson School Dist. No. 6, Counties of Manistee v. Kaleva-Norman-Dickson School Teachers' Assn.*, 393 Mich. 583, 594-595 (1975).

{¶77} Accordingly, we find that the specificity requirement in R.C. 4117.10(A) is not applicable to the issue of arbitrability.

### *Overcoming the Presumption*

{¶78} We next consider whether the Board has overcome the presumption in favor of arbitration based on an express exclusion in the Agreement or other forceful evidence from the bargaining history.

18

{¶79} The Agreement does not contain an express exclusion regarding the arbitrability of the Board's initiation of teacher contract termination proceedings or teacher suspension, and the Board does not assert otherwise. Rather, for the first time on appeal, the Board asserts the existence of "other forceful evidence" that the parties' dispute is not subject to the arbitration provision.

{¶80} As the Board correctly notes, the employee discipline provision imposes a "just cause" requirement. By contrast, R.C. 3319.16 states, in relevant part, as follows:

{¶81} "The contract of any teacher employed by the board of education of any city * * * school district may not be terminated except for *good and just cause*. Notwithstanding any provision to the contrary in Chapter 4117. of the Revised Code, *the provisions of this section relating to the grounds for termination of the contract of a teacher prevail over any conflicting provisions of a collective bargaining agreement entered into after the effective date of this amendment* [October 16, 2009]." (Emphasis added.)

{¶82} The Board also correctly notes that this court and the Sixth District have recently determined that "just cause" and "good and just cause" have different meanings. *See Ellsworth v. Streetsboro City School Dist. Bd. of Edn.*, 11th Dist. Portage Nos. 2018-P-0104 & 2018-P-0105, 2019-Ohio-4731, ¶47; *Hiss v. Perkins Local School Dist. Bd. of Edn.*, 6th Dist. Erie No. E-18-034, 2019-Ohio-3703, ¶152.

{¶83} Thus, the Board argues that if the parties intended for the employee discipline provision to apply to teacher termination decisions, they would have adopted the standard mandated under R.C. 3319.16, i.e., "good and just cause" rather than "just cause."

19

{¶84} The Association and Mr. Chieffo counter by citing *Flower v. Brunswick City School Dist. Bd. of Edn.*, 9th Dist. Medina No. 14CA0021-M, 2015-Ohio-2620, where the Ninth District determined that courts have used the two phrases "interchangeably" and that the "different phrasing" between the two standards "is a matter of semantics, not substance." *Id.* at ¶30.

{¶85} We conclude it is not necessary to determine the parties' intent regarding the employee discipline provision. The "'other forceful evidence'" that the Supreme Court of Ohio referenced in *Gates* must be "'from the bargaining history.'" *Id.* at 667-668, quoting *AT&T* at 654-665 (Brennan, J., concurring). Here, the Board has not presented "evidence from the bargaining history" but has instead asked us to interpret a substantive provision of the Agreement. As explained above, this is beyond the scope of our inquiry. Therefore, we find that the Board has not overcome the presumption in favor of arbitration.

{¶86} Accordingly, Mr. Chieffo's grievance alleging that the Board violated, misinterpreted, and/or misapplied the Agreement when it initiated termination proceedings and suspended him without pay pending termination at the January 18, 2018 school board meeting without just cause is arbitrable.

### The Trial Court's Judgment

{¶87} In its judgment entry denying the Association's and Mr. Chieffo's motion for summary judgment and granting the Board's motion for summary judgment, the trial court determined that the term "discipline" as used in the employee discipline provision does not include "end of employment" situations such as termination.

{¶88} The trial court erred by determining the issue of arbitrability based on the scope of a substantive provision in the Agreement rather than the scope of the arbitration

20

provision. Accordingly, the trial court erred by granting the Board's motion for summary judgment.

{¶89} As set forth above, Mr. Chieffo's grievance is within the scope of the arbitration provision. Therefore, the trial court also erred by denying the Association's and Mr. Chieffo's motion for summary judgment.

{¶90} The Association's and Mr. Chieffo's sole assignment of error has merit.

{¶91} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas is reversed. This matter is remanded for the trial court to enter summary judgment in favor of the Association and Mr. Chieffo, consistent with this opinion.


THOMAS R. WRIGHT, J.,

MATT LYNCH, J.,

concur.