OPINION
{¶ 1} Appellant, Lynn L. Welch, appeals from the September 29, 2006 judgment entry of the Lake County Court of Common Pleas which granted summary judgment in favor of appellees, Mark A. Ziccarelli and Gibson, Brelo, Ziccarelli Martello Co. L.P.A., and held that appellant failed to establish a legal malpractice claim. For the following reasons, we affirm.
 {¶ 2} Statement of Facts and Procedural History *Page 2 
 {¶ 3} Appellant's ("Mr. Welch") legal malpractice claim against appellees (collectively referred to as "Mr. Ziccarelli") stems from his legal separation[1] from his wife in 1999, in which Mr. Welch retained Mr. Ziccarelli to represent him. It is the terms of the property settlement and spousal support agreement and Mr. Welch's misunderstanding of those terms from which this case now arises.
 {¶ 4} On December 31, 1998, at the magistrate's hearing (in the underlying case), Mr. Welch and his ex-wife, Patricia Welch ("Ms. Welch"), executed a handwritten agreement in which Mr. Welch agreed to execute a promissory note and mortgage in favor of Ms. Welch for the sum of $204,000 in order to equalize the property division between the parties.
 {¶ 5} The precise terms of the handwritten agreement as they pertain to the debt are as follows: "H[usband] will grant the W[ife] a mortgage on the Industrial Lots. Terms of mtg. [mortgage] note H[usband] to pay $204,000 to W[ife] at the rate of 1,000 per month, commencing Jan 1. 1999 balance to be paid in full on or before January 1, 2004 to carry simple interest in unpaid principal at the rate of 10 percent per annum."
 {¶ 6} Following this hearing and on the same day, a promissory note and mortgage deed against commercial real estate owned by Mr. Welch[2]
was prepared by Ms. Welch's attorney and signed by Mr. Welch. Mr. Ziccarelli witnessed the execution of the deed. *Page 3 
 {¶ 7} The mortgage note executed by Mr. Welch on December 31, 1998, provided, inter alia, that Mr. Welch would pay "the principal sum of $204,000, with simple interest from date, at the rate of Ten percent (10%) per annum, on the unpaid balance until paid. The said principal and interest shall be payable at such place as the holder may designate in writing, in monthly installments of $1,000.00 commencing on the 1st day of January, 1999, and on or before the 10th day thereafter until the principal and interest are fully paid, except that the final payment of principal and interest, if not sooner paid; shall become due and payable on the 1st day of January, 2004 * * *." The note also permitted larger payments to be made without a prepayment penalty.
 {¶ 8} Subsequently, on March 30, 1999, the court entered its final judgment entry for legal separation that contained the following pertinent language: "* * * in order to equalize the property division, Husband will grant to Wife a mortgage on the industrial lots of the Miscellaneous Barn, and execute a promissory note in the sum of Two Hundred Four Thousand 00/100 ($204,000.00) Dollars which he shall pay at the rate of One Thousand 00/100 ($1,000.00) Dollars per month commencing January 1, 2000. The balance on this mortgage shall be paid in full, without pre-payment penalty, on or before January 1, 2004. The unpaid balance shall be payable with simple interest at the rate of 10% per annum."
 {¶ 9} Accordingly, Mr. Welch paid the $1,000 monthly payments and then on December 31, 2003, tendered $144,000 to satisfy the debt. The $144,000 represented the amount remaining of the principal $204,000 without interest. Mr. Welch disputed whether interest would accrue from inception or only upon his failure to pay the debt on or before January 1, 2004. Ultimately the domestic relations court found that the *Page 4 
agreement called for annual simple interest at the rate of ten percent. Thus, Mr. Welch was ordered to pay an additional $102,000 in interest payments.
 {¶ 10} As a result of this October 1, 2004 judgment of the domestic relations court, Mr. Welch filed suit against Mr. Ziccarelli alleging legal malpractice and that as a result of Mr. Ziccarelli negligently performing his duties, Mr. Welch had to pay Ms. Welch an additional $102,000. That action was voluntarily dismissed on October 26, 2005, and refiled on February 22, 2006. On that same day, February 22, 2006, the trial court issued its case management order ("Order of Procedure"), which supplemented the local rules of court.[3]
 {¶ 11} On May 16, 2006, the court scheduled a pretrial for July 19, 2006, and a jury trial for September 18, 2006. However, on July 6, 2006, Mr. Welch filed a motion for continuance, citing a conflict with his counsel's vacation schedule and on July 11, 2006, the pretrial was rescheduled to August 2, 2006. Thereafter, Mr. Welch filed another motion for continuance on July 20, 2006, citing a conflict with his counsel's hearing schedule in another court. The trial court again granted a continuance on August 4, 2006, and rescheduled the pretrial for August 30, 2006. On August 10, Mr. Ziccarelli filed a motion for leave to file a motion for summary judgment[4], which was granted on August 18, 2006. *Page 5 
 {¶ 12} On August 16, 2006, Mr. Welch filed a motion to incorporate discovery in order to incorporate the "prior discovery requests, responses, and otherwise" from the previously dismissed case into the pending case. Presumably, this included Mr. Welch's initial expert witness, Russell Kubyn's ("Mr. Kubyn"), letter or "expert report", which was dated October 24, 2005 and attached to Mr. Welch's brief in opposition to defendants' motion for summary judgment and motion to dismiss filed in the prior action. This motion was granted on September 5, 2006.
 {¶ 13} Subsequently, on August 31, 2006, eighteen days before trial, Mr. Welch filed a motion for an extension of time to file an additional new, and/or supplemental expert report.[5] One day later, on September 1, Mr. Ziccarelli filed the motion for summary judgment. Mr. Welch then filed his brief in opposition of defendants' motion for summary judgment on September 13, 2006, to which he attached an "amended expert report" of Mr. Kubyn dated September 8, 2006.
 {¶ 14} On September 25, 2006, the court denied Mr. Welch's motion for an extension of time to file a supplemental expert report. Subsequently, on September 29, 2006, the court granted summary judgment in favor of Mr. Ziccarelli, finding that Mr. Welch had failed to establish that Mr. Ziccarelli breached a "duty of care" since Mr. Welch failed to present opposing expert evidence of a breach of that duty. The trial court also found that the October 24, 2005 letter did not constitute expert evidence of a breach of the "duty of care."
 {¶ 15} Mr. Welch timely appealed and now raises the following two assignments of error: *Page 6 
 {¶ 16} "[1.] The trial court erred to the prejudice of the Appellant by refusing to consider the expert [sic] report submitted by Appellant.
 {¶ 17} "[2.] The trial court erred to the prejudice of the Appellant by granting summary judgment in favor of Appellees."
 {¶ 18} In his first assignment of error, Mr. Welch argues that the trial court erred in disregarding the supplemental expert report dated September 8, 2006. Although not specifically assigned as error, Mr. Welch implies that the trial court erred by denying his August 31, 2006 motion for an extension of time to file an expert report. Accordingly, the court disregarded the untimely September 8, 2006 supplemental expert report that Mr. Welch attached to his brief in opposition to summary judgment and found that he failed to allege a breach of the "duty of care." Thus, the court granted summary judgment in favor of Mr. Ziccarelli. We affirm the decision of the trial court.
 {¶ 19} Expert's Reports
 {¶ 20} "The grant or denial of a continuance is a matter that is entrusted to the broad, sound discretion of the trial judge."DePizzo v. Stabile, 11th Dist. No. 2006-T-0027, 2006-Ohio-6102, ¶ 7, citing State v. Unger (1981), 67 Ohio St.2d 65, paragraph one of the syllabus; State ex rel. Buck v. McCabe (1942), 140 Ohio St. 535, paragraph one of the syllabus. "[A]n appellate court will not interfere with the exercise of this discretion unless the action of the court is plainly erroneous and constitutes a clear abuse of discretion." Id. citing Buck at 538 (Citation omitted.) "In many situations, a court will have acted within its discretion whether it granted or denied the continuance. `When applying the abuse of discretion standard [in these situations], a reviewing court is not free to merely substitute its judgment for that of the trial court.'" Id. citing *Page 7 Fontanella v. Ambrosio, 11th Dist. No. 2001-T-0033, 2002-Ohio-3144, ¶ 17. (Emphasis sic.) (Citation omitted.)
 {¶ 21} Further, "[t]here are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process. The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." Id. at ¶ 8, citing Unger at 67, citing Ungar v.Sarafite (1964), 376 U.S. 575, 589.
 {¶ 22} We find no abuse of discretion in the trial court's denial of Mr. Welch's motion for an extension of time to file a supplemental expert report. A review of the record reveals that the trial court granted Mr. Welch two continuances of the pretrial conference when good cause was properly demonstrated. However, Mr. Welch's motion for an extension of time to file a supplemental expert report on August 31, 2006, eighteen days before the scheduled jury trial was untimely and good cause was not so demonstrated.
 {¶ 23} The trial court has "broad discretion in managing pretrial practice and issuing case management orders * * *." Simeone v. Girard CityBd. of Ed., 11th Dist. No. 2006-T-0056, 2007-Ohio-1775, ¶ 25, citingMauzy v. Kelly Services, Inc. (1996), 75 Ohio St. 3d 578, 592. Following the customary practice in the Lake County Court of Common Pleas for the trial judge to issue on or shortly after the commencement of a civil action a case management order, the trial court in this case issued an "Order of Procedure (Civil)" to supplement the local rules and manage the prosecution of the case.
 {¶ 24} The case management order, herein issued to the parties on the date of the filing of the complaint, February 22, 2006, provided that supplemental expert *Page 8 
witness reports must be filed no later than three weeks before trial. The local rules require the expert witness' report to be submitted at least thirty days prior to the pretrial, or in this case, on or before June 19, 2006. Furthermore, under the section entitled "Expert Witnesses," the order reads: "A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplementalreports, to insure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports must be supplied no later than three weeks prior to trial. * * *" (Emphasis added.)
 {¶ 25} Thus, it is clear that Mr. Welch's August 31, 2006 motion for an extension to supplement his earlier deficient expert report was untimely. The rules governing untimely motions are found in the "Pretrial Procedures" of the trial court's case management order. The order states that "[i]f motions and other documents are not filed within the time limits set by this order, they will be deemed untimely and will not be considered. * * *" Further, "[r]equests to file untimely answers or untimely replies to pleadings must be accompanied by a stipulation from opposing counsel or by an affidavit or other evidence showing `excusable neglect.'"
 {¶ 26} Similarly, the Ohio Rules of Civil Procedure provide that, when "an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion * * * upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect." Planin v. Planin, 11th Dist. No. 2005-G-2644, 2006-Ohio-2933, ¶ 16, citing Civ.R. 6(B). "In order to be entitled to relief under Civ.R. 6(B), the movant *Page 9 
must make some showing of `excusable neglect' as to why he was unable to comply with the rule." Id. citing Miller v. Lint (1980),62 Ohio St.2d 209, 214.
 {¶ 27} Thus, our inquiry next focuses on whether Mr. Welch demonstrated excusable neglect for this untimely motion. Our review reveals that he did not. Mr. Welch merely offered that the motion was being made "in good faith based upon facts discovered and evidence submitted by Defendants under the discovery process." This is a blanket statement that gives no indication of why he could not have submitted a compliant expert report prior to this time, as he was required to do pursuant to the court's Order of Procedure and the Ohio Rules of Civil Procedure.
 {¶ 28} We also note that in the previously dismissed case Mr. Welch submitted a letter report from the same expert, Mr. Kubyn. However, this letter did not conform to the requirements of the Order of Procedure or the local rules, nor did Mr. Kubyn even opine that Mr. Ziccarelli had breached the standards of care or performed negligently in any fashion. A seasoned counselor, such as Mr. Welch's attorney, should have known this was not an adequate expert report either for trial preparation or for purposes of a summary judgment motion. Then Mr. Welch waited until eighteen days before the scheduled trial to move for an extension, knowing full well that the granting of such a continuance would delay trial as Mr. Ziccarelli would then need the opportunity to review the report and depose the expert. Thus, unsurprisingly, the court found Mr. Welch's motion not well-taken. We find no abuse of discretion in the trial court's determination.
 {¶ 29} As we said in The Estate of Virginia Ann Thut, 11th Dist. No. 2004-L-138, 2005-Ohio-4647, ¶ 20, which also ironically involved Mr. Welch's counsel, "[i]t was the attorney's decision to file this last motion near the end of the fourteen day period, rather *Page 10 
than immediately after the magistrate's decision was entered, with the hope that the trial court would act on the extension request before the fourteen day objection period had concluded. Based on the record in this matter regarding the number of motions requesting extensions and the trial court's leniency in granting these prior motions, the trial court did not act unreasonably in issuing a judgment entry denying the motion on July 28, 2004."
 {¶ 30} We further stated: "[t]he trial court's past history of patiently reviewing these motions demonstrates the court was not acting in a manner that was `unreasonable, arbitrary, or unconscionable' toward appellant." Id. at ¶ 21, citing Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219. "By the time the motion at issue was filed, we believe the trial court was attempting to avoid further delays of the case, and denied the motion in an effort to promote judicial economy and bring the estate proceedings to a conclusion." Id.
 {¶ 31} Thus, similarly here, after repeated continuances of the pretrial date and the fact that the report was originally due on June 19, 2006, it is no surprise that the trial court denied Mr. Welch's untimely motion for an extension to supplement and/or add expert report. Even were we to find that the court erred in refusing to consider Mr. Welch's untimely expert report, it cannot be said that this report would have changed the outcome on summary judgment since the expert report is deficient and does not set forth any departure from the standard of care.[6]
 {¶ 32} We hold the trial court did not abuse its discretion.
 {¶ 33} Mr. Welch's first assignment of error is without merit. *Page 11 
 {¶ 34} Summary Judgment
 {¶ 35} In his second assignment of error, Mr. Welch contends that the court erred in granting summary judgment for Mr. Ziccarelli. Specifically, Mr. Welch argues that even without the required expert affidavit, the trial court erred in granting summary judgment for Mr. Ziccarelli since the "claimed breach of professional duty is within the common understanding of the laymen on the jury." We disagree with this contention.
 {¶ 36} "Pursuant to Civ.R. 56(C), summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Holik v. Richards, 11th Dist. No. 2005-A-0006, 2006-Ohio-2644, ¶ 12, citing Dresher v. Burt (1996),75 Ohio St.3d 280, 293. "In addition, it must appear from the evidence and stipulations that reasonable minds can come to only one conclusion, which is adverse to the nonmoving party." Id. citing Civ.R. 56(C). Further, the standard in which we review the granting of a motion for summary judgment is de novo. Id. citing Grafton v. Ohio Edison Co.
(1996), 77 Ohio St.3d 102, 105.
 {¶ 37} Accordingly, "[s]ummary judgment may not be granted until the moving party sufficiently demonstrates the absence of a genuine issue of material fact. The moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim."Brunstetter v. Keating, 11th Dist. No. 2002-T-0057, 2003-Ohio-3270, ¶ 12, citing Dresher at 292. "Once the moving party meets the initial burden, the nonmoving party must then set forth specific facts demonstrating that a genuine issue of material fact does exist that must be preserved for trial, and if the nonmoving party does not so respond, summary *Page 12 
judgment, if appropriate, shall be entered against the nonmoving party." Id., citing Dresher at 293.
 {¶ 38} To establish a claim of legal malpractice, Mr. Welch was required to show: (1) an attorney-client relationship that gave rise to a duty, (2) a breach of that duty, and that (3), as a result of that breach, he suffered damages. Id. at ¶ 13, citing Sprague v. Simon
(2001), 144 Ohio App.3d 437, 441, citing Krahn v. Kinney (1989),43 Ohio St.3d 103, 105. See, also, Vahila v. Hall (1997), 77 Ohio St.3d 421.
 {¶ 39} It is undisputed that there existed an attorney-client relationship between Mr. Ziccarelli and Mr. Welch. Thus, our inquiry turns to whether Mr. Welch established that Mr. Ziccarelli performed negligently and below the proper standard of care. To establish the standard of care without expert testimony, the alleged negligence must be either within the ordinary knowledge of the layman or be so clear that it constitutes negligence as a matter of law. Brunsetter at ¶ 16, citing Bloom v. Dieckmann (1983), 11 Ohio App.3d 202, 203. Mr. Welch argues in this case that it is the former reason he should prevail. That is, Mr. Welch argues that Mr. Ziccarelli's alleged negligence is so obvious as to be within the common knowledge of the average juror that no expert testimony is necessary. We disagree.
 {¶ 40} Since summary judgment denies the party his or her "day in court" it is not to be viewed lightly as docket control or as a "little trial." The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party. In Dresher v.Burt, the Supreme Court of Ohio held that the moving party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record before the trial court that *Page 13 
demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim. The evidence must be in the record or the motion cannot succeed. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case but must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) that affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. If the moving party has satisfied its initial burden, the nonmoving party has a reciprocal burden outlined in the last sentence of Civ.R. 56(E) to set forth specific facts showing there is a genuine issue for trial. If the nonmoving party fails to do so, summary judgment, if appropriate shall be entered against the nonmoving party based on the principles that have been firmly established in Ohio for quite some time in Misteff v. Wheeler (1988), 38 Ohio St.3d 112.
 {¶ 41} The court in Dresher went on to say that paragraph three of the syllabus in Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108, cited by Mr. Ziccarelli, is too broad and fails to account for the burden Civ.R. 56 places upon a moving party. The court, therefore, limited paragraph three of the syllabus in Wing to bring it into conformity with Misteff. (Emphasis added.)
 {¶ 42} The Supreme Court in Dresher went on to hold that whenneither the moving nor nonmoving party provides evidentiary materials demonstrating that there are no material facts in dispute, the moving party is not entitled a judgment as a matter of law as the moving party bears the initial responsibility of informing the trial court of the basis for the motion, "and identifying those portions of the record which demonstrate the *Page 14 
absence of a genuine issue of fact on a material element of the nonmoving party's claim." Id. at 276. (Emphasis added.)
 {¶ 43} Mr. Ziccarelli presented evidentiary materials demonstrating an absence of a genuine issue of material fact as to the material elements of Mr. Welch's complaint. With the moving party's initial burden having been met with evidence from depositions of Mr. Ziccarelli and Mr. Welch, and Mr. Ziccarelli's (albeit self-serving)[7] affidavit, the burden then shifted to Mr. Welch to set forth specific facts demonstrating a genuine issue for trial.
 {¶ 44} In order to prove that Mr. Ziccarelli breached a legal duty, Mr. Welch was required to first demonstrate the standard of care from which the legal duty arises, and from which Mr. Ziccarelli deviated, and then, most importantly, demonstrate that he breached that standard of care. However, Mr. Welch failed to carry his burden of proof establishing the standard of care and further that any breach was the proximate cause of the harm alleged. In this case it is not so obvious that Mr. Ziccarelli performed his duties negligently. To be sure, it is simply not clear that without an expert witness the jury would be able to conclude that his performance was negligent.
 {¶ 45} The evidence before the trial court demonstrates that Mr. Welch was present for the settlement negotiations, Mr. Ziccarelli reviewed and signed the settlement documents and Mr. Welch agreed to the settlement. Furthermore, Mr. Ziccarelli was present when Mr. Welch signed the mortgage that reflected the same *Page 15 
handwritten agreement. The domestic relations court itself then approved the settlement agreement and incorporated its terms into the final decree.
 {¶ 46} Mr. Welch now claims that he did not understand the terms of that agreement. However, without expert testimony, there is nothing from which the jury could conclude that Mr. Ziccarelli's conduct was unreasonable under the circumstances. To be sure, an average juror has neither the legal training nor the legal expertise to infer, from Mr. Welch's allegations, that reasonable attorneys, similarly situated, would have acted differently than Mr. Ziccarelli in these circumstances. Especially, in these circumstances where Mr. Ziccarelli was representing a client who was known to be an established business person and who was well-versed in loans and interest provisions from prior business dealings and the various mortgages and loans that he procured over the years. Thus, without expert testimony alleging that Mr. Ziccarelli deviated from the proper standard of care, Mr. Welch's argument must fail.
 {¶ 47} It is axiomatic that "[s]ummary judgment in favor of the attorney is appropriate when a plaintiff fails to supply expert testimony on alleged negligence that is `neither within the ordinary knowledge of the layman nor so clear as to constitute negligence as a matter of law.'" Brunsetter at ¶ 16, citing Bloom at 203. Thus, the trial court properly granted summary judgment in favor of Mr. Ziccarelli.
 {¶ 48} Since we conclude that Mr. Ziccarelli's alleged negligence in relating to Mr. Welch, the terms of the settlement agreement, and the actions that flowed therefrom are not in the ordinary knowledge of the lay juror and since there is no expert affidavit to establish such, we agree with the trial court and find that summary judgment was appropriately granted in favor of Mr. Ziccarelli. *Page 16 
 {¶ 49} Additionally, we note that the untimely report, even if it had been considered by the trial court, would not have salvaged this case. The thrust of Mr. Welch's malpractice case and the expert's second report was that had Mr. Ziccarelli accompanied Mr. Welch to opposing counsel's office when documents effectuating the settlement reached earlier that day were signed, he ultimately would not have had to pay the amount of interest because there was some variance in the language used in the settlement agreement and the mortgage note and deed.
 {¶ 50} This argument fails on two counts. One, Mr. Ziccarelli was present at the time the mortgage deed was signed because Mr. Ziccarelli witnessed Mr. Welch's signature on that document. Two, the underlying issue of this case regarding the calculation of simple interest on the mortgage note was already decided and affirmed by this court in the case of Welch v. Welch, 11th Dist. No. 2005-L-147, 2006-Ohio-6862, ¶ 28, where we held: "Furthermore, in appealing the instant judgment in foreclosure, appellant [Mr. Welch] is also challenging the findings of the Domestic Court regarding the nature and amount of interest owed (past and current) on the principal amount remaining on the mortgage. That is, the General Division relied on the Domestic Court's interpretation of the original separation order which found appellant owed interest at 10% per annum on the principal from the date of signing the mortgage note. Because we affirm the General Division's award ofsummary judgment, we believe there is no error in the Domestic Court'sorder enforcing the interest and the amount at which it arrived."
(Emphasis added.) *Page 17 
 {¶ 51} Mr. Welch's second assignment of error is without merit.
 {¶ 52} The judgment of the Lake County Court of Common Pleas is affirmed.
CYNTHIA WESTCOTT RICE, P.J., concurs, DIANE V. GRENDELL, J., concurs in judgment only.
[1] Mr. Welch's wife, Patricia Welch, filed a complaint for divorce which was withdrawn and Mr. Welch filed an amended counterclaim for legal separation in Case No. 98 DR 000110, Lake County Common Pleas Court, Domestic Relations Division.
[2] Ms. Welch agreed to quitclaim her interest in the commercial real estate to Mr. Welch.
[3] The Local Rules of the Court of Common Pleas of Lake County General Division provide in Section V(A) that a written report of an expert witness expected to be called to testify shall be delivered in accordance with the guidelines set forth in the case management order and prior to pretrial conference. At Section V(A)(3), the local rules require the party with the burden of proof to a particular issue to first submit expert reports as to that issue at least thirty days before any pretrial conference. The trial court's own case management order requires supplemental reports to be supplied no later than three weeks prior to trial.
[4] The parties' depositions had just been completed. Mr. Welch was deposed on July 28, 2006 and Mr. Ziccarelli was deposed on August 10, 2006 (and was originally notified on July 18, 2006.)
[5] The trial court could not construe this as a Civ.R. 56(F) motion because it was not supported by an affidavit.
[6] The report that was submitted was not in affidavit form, nor was it submitted with an affidavit of Mr. Welch's counsel attesting to its authenticity.
[7] Albeit self-serving, a professional facing a malpractice claim may serve as his or her own expert. As we recently reviewed in a medical malpractice case, Hoyle v. Sitta Gombeh-Alie M.D., 11th Dist. No. 2006-A-0067, 2007-Ohio-1641, ¶ 24, "many affidavits are self-serving, but this does not `render the expert opinion incompetent or inadmissible, rather, the self-serving nature of the opinion is an issue going to the credibility of the witness that is left for the trier of fact at trial.'" (Citation omitted). *Page 1