[Cite as *C.K. v. State*, 2014-Ohio-1243.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100193**

## C.K.

PLAINTIFF-APPELLANT

vs.

## STATE OF OHIO

DEFENDANT-APPELLEE

## JUDGMENT:
REVERSED AND REMANDED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-12-784160

**BEFORE:** McCormack, J., Keough, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 27, 2014

**ATTORNEYS FOR APPELLANT**

William B. Eadie
Nicholas A. Dicello
Daniel Frech
Spangenberg Shibley & Liber LLP
1001 Lakeside Avenue, East
Suite 1700
Cleveland, OH 44114


**ATTORNEYS FOR APPELLEE**

Debra Gorrell Wehrle
Assistant Attorney General
Corrections Unit
150 East Gay St., 16th Floor
Columbus, OH 43215

Brian R. Gutkoski
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH 44113

TIM McCORMACK, J.:

{¶1} Plaintiff-appellant C.K. appeals from a decision of the Cuyahoga County Court of Common Pleas granting summary judgment in favor of the state as to his complaint for wrongful imprisonment brought pursuant to R.C. 2743.48.

{¶2} C.K.'s murder conviction was overturned on appeal for being against the manifest weight of the evidence. This court determined that the evidence showed he acted in self defense, permitted by Ohio's Castle Doctrine. The wrongful imprisonment statute requires claimants to prove that no criminal proceeding "can be brought, or will be brought" by the prosecutor against them for any act associated with their conviction. In this case, the state does not claim it intends to, or there is any new evidence, to retry C.K. for murder. The trial court, however, held that, as a matter of law, C.K. is unable to prove no criminal proceeding "can be brought, or will be brought" against him because the offense of murder does not have a statute of limitations. After a thorough and careful review of the case law and the record before us, we conclude that the unique circumstances in this case have created a genuine issue of material fact regarding whether C.K. is eligible for a declaration of wrongful imprisonment. The trial court prematurely concluded this matter in granting summary judgment in favor of the state.

## Substantive Facts and Procedural History

{¶3}   C.K., a laid off engineer and part-time community college professor, as well as a U.S. Air Force veteran, was indicted for murdering Andre Coleman in C.K.'s own home.   His first trial, in March 2010, ended in a mistrial because of an inappropriate question by the prosecutor at trial.   A second jury trial was held in August 2010, and the jury found him guilty.   On appeal, a unanimous panel of this court reversed the conviction, holding that the Castle Doctrine applied in this case and C.K.'s murder conviction was against the manifest weight of the evidence.   In the following, we summarize the evidence adduced at the second trial as described by the prior panel, in *State v. [C.K.]*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097 (8th Dist.), *appeal not accepted, State v. [C.K.]*, 131 Ohio St.3d 1439, 2012-Ohio-331, 960 N.E.2d 988.

{¶4}   C.K. was laid off from his job with Sprint in 2008.   In June 2009, he rented the upstairs of his house to a tenant, who was a friend of Valerie McNaughton ("McNaughton").   After the tenant left, McNaughton began renting the upstairs unit. She then asked C.K. to allow her boyfriend Andre Coleman ("Coleman") to move into the house.   C.K. consented.   McNaughton had a tumultuous relationship with Coleman, and the relationship was fraught with physical abuse.   Coleman and McNaughton argued and fought constantly, and Coleman would beat McNaughton violently when he was coming down from a crack cocaine high.   By the end of August 2009, the fighting between Coleman and McNaughton became so frequent and disruptive that C.K. ordered Coleman to leave his house.   C.K. escorted Coleman off of his property and told him not to return.

Coleman was uncooperative, and a loud argument ensued. Coleman eventually left after neighbors summoned the police.

{¶5} After Coleman left, McNaughton warned C.K. about Coleman's violent past. She showed C.K. information on Cuyahoga County's website, which indicated Coleman had been convicted in 1990 for involuntary manslaughter. He had also been convicted with carrying a concealed weapon and numerous drug-related offenses.

{¶6} McNaughton testified that around 4 a.m., on September 20, 2009, she and Coleman were with two others smoking crack cocaine in a motel room. After consuming all the crack cocaine they had purchased, they bought more, returned to the motel, and imbibed more. Once the crack cocaine ran out, Coleman encouraged McNaughton to make sexual advances towards one of the other two individuals in an effort to influence that person to buy more drugs. McNaughton refused, and Coleman became angry. As a ruse to leave the motel, McNaughton told Coleman that she knew someone who had agreed to advance her drugs that she needed to meet. The foursome drove to a parking lot near C.K.'s home. McNaughton exited the vehicle while the others remained inside; she then surreptitiously slipped away and made her way back home. Once home, McNaughton told C.K. that she just left Coleman a few streets away and that Coleman was very upset and would be looking for her.

{¶7} A short time later, McNaughton observed Coleman exiting the vehicle. McNaughton began yelling hysterically that Coleman had arrived and that they should lock the doors. At that point, Coleman began banging on the locked back door. He then

kicked out the bottom panel of the door and entered the house. C.K. told Coleman he was not allowed on the property, but Coleman pushed passed him and came towards McNaughton in the living room. McNaughton yelled that the police had been called, which prompted Coleman to leave. McNaughton then hid in the garage.

{¶8} While McNaughton hid in the garage and C.K. was repairing the door, Coleman returned. C.K. demanded that he leave, but Coleman brushed passed him, asked if C.K. wanted to "shoot it out," and proceeded to search for McNaughton. As C.K. testified, Coleman held one hand behind his back signaling that he had a gun. Coleman left after he could not find McNaughton in the house.

{¶9} Coleman returned a third time while C.K. was still repairing the broken door. Again, C.K. demanded that Coleman leave, at which time McNaughton came back to the house, thinking it was safe to return after hiding in the garage for ten minutes. Coleman immediately started yelling at McNaughton to give him money, followed her into the living room, grabbed her by the hair, threw her to the ground, and began beating her. According to McNaughton's testimony, while Coleman was beating her, C.K. fired two shots, hitting Coleman, who spun around and fell to the ground. C.K. shot Coleman several more times.

{¶10} C.K. testified that when McNaughton yelled for help, he demanded that Coleman stop the assault. When Coleman reached behind his back for his gun, C.K. pulled his revolver and shot Coleman. C.K. testified that after he shot Coleman, Coleman spun around, fell to the ground, and began to twitch, which prompted C.K. to fire several more times. C.K. described his thoughts at the moment of the shooting: "I thought I was

dead. I thought, I was panicking, I thought it just about, I thought he was going to shoot me. My gun was brand new, I never tried it. I didn't even know if it would work. I was afraid it would fail me and he was going to shoot me. I was pretty much panicking at the time."

*[C.K.]*, 195 Ohio App.3d 343, 2011-Ohio-4814, 959 N.E.2d 1097, at ¶ 4 -17.

{¶11} C.K. added, "After I fired and he fell, I walked over to see if he was moving or if I hit him. I tried to see if he was moving or if I hit him. I tried to see if I had actually hit him or if I missed or what * * *." *Id*. at ¶ 28. Describing what was going through his mind when he looked over Coleman as he lay on the ground, C.K. testified "Well I am looking over close. I did have my gun there pointing, holding it right next to him just to make sure, in case I just grazed him or he's about to jump back up at me. I saw movement and I panicked and pulled the trigger again, and I don't know if the gun actually went off or if I had shot all the rounds already or if I did fire again." *Id*.

{¶12} The jury found C.K. guilty of murder and a firearm specification. In September 2010, he was sentenced to 15 years to life for his murder conviction and three years for the firearm specification.

{¶13} A year later, on September 22, 2011, this court reversed C.K.'s conviction based on the conviction being against the manifest weight of the evidence. This court explained that under the recently-strengthened R.C. 2901.09(B),[1] which codifies Ohio's

---

[1]R.C. 2901.09 ("When there is no duty to retreat before using force in self-defense, defense of another, or defense of residence") states: "(B) For purposes of any section of the Revised Code that sets forth a criminal offense, a person who lawfully is in that person's residence has no duty to retreat before

"Castle Doctrine," there is no longer a duty to retreat inside one's home, and the statute creates a rebuttable presumption and the state had the burden to prove C.K. was not acting in self-defense. *Id.* at ¶ 24. Reviewing the evidence, this court found that C.K. "established all three elements of the affirmative defense of self-defense and the Castle Doctrine fully applies to the facts of the instant case." *Id.* at ¶ 30. We also found that "the jury appeared confused about the jury instruction as evidenced by questions regarding the definition of 'unlawful entry' and 'Castle Doctrine.' Further, the jurors queried whether the Castle Doctrine applied to both self-defense of the owner of the home and anyone in the home." *Id.* We therefore concluded that the jury lost its way and C.K.'s convictions were against the manifest weight of the evidence. We reluctantly remanded the case for a new trial because we were "restrained by the standard of review under the manifest weight of the evidence and cannot discharge C.K." *Id.* at ¶ 31.

{¶14} The state appealed this court's judgment to the Supreme Court of Ohio, which denied review on February 1, 2012, in *C.K.*, 131 Ohio St.3d 1439, 2012-Ohio-331, 960 N.E.2d 988. Four weeks later, on February 28, 2012, the prosecutor dismissed the criminal matter "without prejudice." In the meantime, C.K. also filed an application to seal all official records. The trial judge, who had presided over the jury trial, granted his application for expungement. The state appealed the expungement decision to this court, arguing that because the murder offense has no statute of limitations, the expungement

---

using force in self-defense, defense of another, or defense of that person's residence, * * *."

should be denied. This court found the argument lacking in merit and affirmed the expungement order in *State v. C.K.*, 8th Dist. Cuyahoga No. 99886, 2013-Ohio-5135.

{¶15} On June 1, 2012, C.K. commenced this wrongful imprisonment action pursuant to R.C. 2743.48, seeking a declaratory judgment that he was wrongfully imprisoned. Both parties filed cross motions for summary judgment. The state submitted an affidavit by an assistant prosecutor, who stated that the case "remains open * * * to re-filing /re-indicting, given the lack of statutory limitations [for murder] under R.C. 2901.13(A)(2)."

{¶16} The trial court granted summary judgment in favor of the state, based *solely* on the fact that the murder offense does not have a statute of limitations. The trial court found that the "mere possibility" of being reindicted precludes C.K. from being found to have been wrongfully imprisoned pursuant to R.C. 2743.48(A).

## Summary Judgment

{¶17} An appellate court reviews summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Accordingly, we afford no deference to the trial court's decision and must independently review the record to determine if summary judgment was appropriate. *Brown v. Scioto Cty. Bd. Commrs.*, 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (4th Dist.1993). Summary judgment is appropriate where it appears that: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the

motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978); Civ.R. 56(C).

{¶18} "Since summary judgment denies the party his or her 'day in court' it is not to be viewed lightly as docket control or as a 'little trial.' The jurisprudence of summary judgment standards has placed burdens on both the moving and the nonmoving party." *Welch v. Ziccarelli*, 11th Dist. Lake No. 2006-L-229, 2007-Ohio-4374, ¶ 40. The moving party seeking summary judgment "bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims." *Dresher v. Burt*, 75 Ohio St.3d 280, 293, 662 N.E.2d 264 (1996). A moving party does not discharge this initial burden under Civ.R. 56 by simply making a conclusory assertion that the nonmoving party has no evidence to prove its case. *Id.* Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ.R. 56(C) that the nonmoving party has no evidence to support its claims. *Id.*

{¶19} In the first assignment of error, C.K. contends the trial court erred in granting the state's motion for summary judgment. In its second assignment of error, he contends the trial court erred in denying his motion for summary judgment. As the assignments of error are related, we address them together.

## Wrongful Imprisonment Statute

**{¶20}** In 1986, R.C. 2743.48 was enacted by Sub.H.B. 609 to allow wrongfully imprisoned individuals to bring civil actions against the state for monetary damages. "The statute was designed to replace the former practice of compensating those wrongfully imprisoned by ad hoc moral-claims legislation." *Doss v. State*, 135 Ohio St.3d 211, 2012-Ohio-5678, 985 N.E.2d 1229, ¶ 10. The statute envisions a two-step process to compensate those who have been wrongfully imprisoned. The first step is an action in the common pleas court seeking a preliminary factual determination of wrongful imprisonment; the second step is an action in the Court of Claims to recover money damages. *Id.*

**{¶21}** The wrongful imprisonment statute, R.C. 2743.48, states the following:

(A) As used in this section and section 2743.49 of the Revised Code, a "wrongfully imprisoned individual" means an individual who satisfies each of the following:

(1) The individual was charged with a violation of a section of the Revised Code by an indictment or information, and the violation charged was an aggravated felony or felony.

(2) The individual was found guilty of, but did not plead guilty to, the particular charge or a lesser-included offense by the court or jury involved, and the offense of which the individual was found guilty was an aggravated felony or felony.

(3) The individual was sentenced to an indefinite or definite term of imprisonment in a state correctional institution for the offense of which the individual was found guilty.

(4) The individual's conviction was vacated, dismissed, or reversed on appeal, the prosecuting attorney in the case cannot or will not seek any further appeal of right or upon leave of court, and *no criminal proceeding is pending, can be brought, or will be brought* by any prosecuting attorney, city director

of law, village solicitor, or other chief legal officer of a municipal corporation against the individual *for any act associated with that conviction.*

(5) Subsequent to sentencing and during or subsequent to imprisonment, an error in procedure resulted in the individual's release, or it was determined by the court of common pleas in the county where the underlying criminal action was initiated that the charged offense, including all lesser-included offenses, either was not committed by the individual or was not committed by any person.

(Emphasis added.)

**{¶22}** The statute enumerates five factors and a claimant must satisfy all five factors by a preponderance of the evidence before he or she can be declared a wrongfully imprisoned individual. *Dunbar v. State*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, citing *Doss* at paragraph one of the syllabus.

**{¶23}** Turning to the instant case, it is undisputed that C.K. meets the first three prongs of the statute. C.K. claims he also meets the fourth prong (R.C. 2743.48(A)(4)) and fifth prong (R.C. 2743.48(A)(5)) and therefore is entitled to summary judgment. The trial court granted summary judgment in favor of the state, finding that, because the offense of murder does not have a statute of limitations, C.K. could not satisfy the fourth prong as a matter of law, and the fourth prong disposed of this case. Thus, this appeal only concerns whether the trial court properly granted summary judgment based on its ruling that C.K. could not satisfy the fourth prong as a matter of law.

### The Fourth Prong: Whether No Criminal Proceeding "Can Be Brought, or Will be Brought"

**{¶24}** The fourth prong set forth in R.C. 2743.48(A)(4) requires the claimant to prove that "* * * no criminal proceeding is pending, can be brought, or will be brought by

any prosecuting attorney * * * against the individual for any act associated with that conviction." Here, it is undisputed that "no criminal proceeding is pending" against C.K.; therefore, this appeal turns on whether no criminal proceeding for any act associated with his murder conviction "can be brought, or will be brought" against him.

{¶25} The trial court, in granting the state summary judgment, reasoned that because there is no statute of limitations for murder, it is within the state's right to retry C.K. at any time. The trial court stated that the "mere possibility" of being reindicted due to a lack of statute of limitations thus precluded C.K. from being able to satisfy the fourth prong, rendering him ineligible from recovery under the wrongful imprisonment statute, as a matter of law. As we explain in the following, the trial court's interpretation of the statute is too narrow.

{¶26} The statute makes no mention of the statute of limitations. Rather, the statute employs common words "can" and "will," which suggests a broader inquiry, for which the statute of limitations is but one factor.

{¶27} Furthermore, we do not read the word "can" as denoting "mere possibility," as the trial court seemed to believe. Theoretically, the prosecutor *can* always bring a charge, whether in good faith or not, even where the criminal charge may be outside of the statutory time, in violation of a defendant's speedy trial right, or barred by double jeopardy. Therefore, interpreting the word "can" in its literal sense renders the phrase at issue virtually meaningless.

**{¶28}** Rather, we agree with the Tenth District's interpretation of the phrase in a recent wrongful imprisonment case, where the court stated "[t]he use of the phrase 'no criminal proceedings * * * can * * * or will be brought' was clearly intended by the General Assembly to bar recovery to a claimant against whom *criminal proceedings are still factually supportable and legally permissible* following reversal." (Emphasis added.) *LeFever v. State*, 10th Dist. Franklin No. 12AP-1034, 2013-Ohio-4606, ¶ 26.

**{¶29}** Hypothetically, if C.K. were to have been retried upon remand after this court reversed his conviction as against the manifest weight of the evidence *and* subsequently acquitted by the jury, C.K. would have been able to show that the prosecutor "cannot, or will not" bring another criminal proceeding, because another criminal proceeding for any act associated with his prior murder conviction would have been legally impermissible due to the protection of double jeopardy. Under this scenario, C.K. would be able to satisfy the fourth prong, despite that his offense lacks a statute of limitations.

**{¶30}** C.K., however, cannot show another criminal proceeding is legally impermissible, because, upon remand, the state elected not to retry him but instead dismissed his case "without prejudice." We agree with the Tenth District, however, that the "cannot/will not" inquiry contemplates not just whether another criminal proceeding associated with the prior conviction is legally permissible, but also whether such a criminal proceeding is *factually supportable*.

**{¶31}** In *LeFever*, the defendant was accused of poisoning her husband with amitriptyline and nortriptyline and convicted of aggravated murder. Her conviction was

later reversed because the state's toxicologist had lied about his qualifications. The prosecutor dismissed her indictment without prejudice. The defendant then sought a wrongful imprisonment declaration. The trial court granted summary judgment in favor of the state based on the fourth prong of R.C. 2743.48, just as in this case. The Tenth District affirmed, after determining that the state presented evidence "establishing that the prosecutor had not abandoned his effort to prosecute appellant for the death of her husband and that such a prosecution was both factually sustainable and legally permissible following reversal." *Id*. at ¶ 16.

{¶32} The Tenth District pointed to evidence that included the prosecutor's press release issued after dismissing the case without prejudice. The press release detailed the prosecutor's intent to reindict the defendant when future scientific advancements would allow for the testing of the biological samples to detect the timing, mode and/or manner of administration of the poisons, which the prosecutor explained could not be done with the current state of scientific know-how. The prosecutor also testified in his deposition testimony that "he still believed that he had at least 'a fair chance of getting [the defendant] convicted of at least aggravated attempted murder.'" *Id*. at ¶ 18. According to the prosecutor, the defendant's children had indicated they were willing to give testimony implicating their mother regarding her attempt to poison their father with a fumigant. In addition, one other witness had come forward since the reversal of appellant's conviction to offer testimony that would corroborate the children's account. The prosecutor also testified that his assessment of the chances of a conviction for attempted aggravated murder

was based upon the evidence he received since the defendant's conviction were reversed, the testimonial evidence presented in the first trial, and the remaining physical evidence uncovered in the search of the defendant's home.

{¶33} Based on the evidence presented by the state on the wrongful imprisonment case, the Tenth District concluded summary judgment in the state's favor was warranted because the evidence conclusively demonstrated that another criminal proceeding — for attempted aggravated murder — is not only legally permissible but also factually supportable; as such, the defendant failed to prove the fourth prong and was precluded from recovery under the wrongful imprisonment statute. *Id*. at ¶ 27.

{¶34} *LeFever* provides an interesting contrast to the instant case. Here, C.K. pointed to the lack of new evidence for a new trial and the inactive status of the investigation to support his claim that he has satisfied the fourth prong. The state claimed the murder case is still under investigation and remains open. However, to support its claim, the state only submitted an affidavit by an assistant prosecutor, who stated merely that the case "remains open * * * *given* the lack of statutory limitations" for a murder offense. (Emphasis added.) Thus, in contrast to *LeFever*, the only reason provided by the prosecutor for C.K.'s case being "open" is a lack of a statute of limitations for murder. There was no evidence presented by the state as to whether the prosecutor has discovered new evidence or interviewed new witnesses relating to C.K.'s claim of self-defense; neither was there sworn testimony from the prosecutor that there is an ongoing investigation. Therefore, even if retrying C.K. for murder is legally permissible due to a lack of a time

limitation for murder, the state certainly has not presented any evidence to show that bringing another criminal proceeding for murder against C.K. is factually supportable.

{¶35} Therefore, the trial court's granting of summary judgment for the state based solely on the fourth prong is erroneous. Under the unique circumstances of this case, there is a factual question as to whether C.K. satisfies the fourth prong. Additional evidentiary inquiry is necessary to determine whether another criminal proceeding in connection with his prior murder conviction "can be brought, or will be brought" against C.K., in other words, whether reindicting or retrying him is both legally permissible and factually supportable.

{¶36} In its attempt to prove C.K. could not satisfy the fourth prong, the state advances another theory. It asks us to interpret R.C. 2743.48(A)(4) as requiring C.K. to prove that he was not engaging in "any criminal conduct" at the time of the shooting incident, whether relating to the murder charge or not. In its motion for summary judgment, the state alleged C.K. was engaged in criminal conduct, to wit, abusing drugs, "in the week leading up to" the incident. For proof, the state submitted an affidavit of a detective who stated that during a search of C.K.'s home the day after the shooting, the police found drug paraphernalia (a pipe) inside a bank envelope and four bank receipts dated several weeks before the incident showing withdrawals over $10,000.[2] The state also submitted pictures of the various items referenced in the affidavit.

---

[2]In the criminal trial, C.K. filed a motion in limine to exclude the evidence and the trial court granted the motion.

**{¶37}** The state argues that its interpretation of R.C. 2743.48(A)(4) is consistent with the the Supreme Court of Ohio's analysis in *Gover v. State*, 67 Ohio St.3d 93, 95, 616 N.E.2d 207 (1993). Our reading of *Gover* shows otherwise.

**{¶38}** In *Gover*, the defendant entered a restaurant and stole money from its safe. He was convicted of safecracking. The appellate court, however, reversed the conviction due to insufficient evidence, because it found the safe was not a safe as defined in the safecracking statute. The defendant then sought a wrongful imprisonment declaration.

**{¶39}** Interpreting R.C. 2743.48(A)(4), the Supreme Court of Ohio stated that claimants for wrongful imprisonment "must prove that at the time of the incident for which they were initially charged, they were not engaging in any other criminal conduct *arising out of the incident for which they were initially charged*." (Emphasis added.) *Id*. at 95.

**{¶40}** Applying R.C. 2743.48(A), the court in *Gover* concluded that the claimant failed to prove he satisfied the fourth prong, because, while not committing safecracking, he was nevertheless committing burglary; while the prosecutor incorrectly chose to indict the defendant for safecracking, he might also have been charged with burglary for his conduct in the incident. The court emphasized that the statutory language is "intended to filter out those claimants who have had their convictions reversed, but were committing a different offense at the time that they were engaging in the activity for which they were initially charged." *Id*. at 95. Thus, the defendant in *Gover* could not satisfy the fourth prong, because he could not prove that no criminal proceeding "can be brought" for his act associated with his safecracking conviction.

{¶41} In contrast to *Gover*, the state's claim in this case that C.K. could not satisfy the fourth prong because of his criminal conduct, namely, drug abuse, "in the week leading" to the shooting incident, appears to be disingenuous. We fail to see how C.K.'s alleged illegal drug use, even if it were true, could be construed as "criminal conduct arising out of" the shooting incident, or "associated with" his murder conviction. The state essentially asks us to interpret the statute as requiring a wrongful imprisonment claimant to prove that he or she did not engage in any criminal conduct, whether or not contemporaneous with the incident for which the individual was initially charged. There is no case law authority that would support such an interpretation of the statute. The state's allegation that C.K. engaged in illegal drug activity would appear to be, at best, a red herring and, at worse, an attempt to create a bias against C.K. in this wrongful imprisonment action.

{¶42} We emphasize again that this appeal only concerns the fourth prong of the statute. After a careful review of the case law and the record before us, and applying the summary judgment standard, we conclude the circumstances of this case have created a genuine issue of material fact regarding the fourth prong, i.e., whether, more likely than not, another criminal procedure "can or will be" brought against C.K. for the shooting incident. The trial court properly denied C.K.'s motion for summary judgment, but it improperly granted summary judgment in favor of the state based solely on its conclusion that C.K. is precluded from seeking recovery because he could not satisfy the fourth prong of the wrongful imprisonment statute due to a lack of a statute of limitations for murder.

**{¶43}** We are fully aware that "[n]ot every person who is released from prison because of a successful appeal is entitled to compensation." *Doss*, 136 Ohio St.3d 181, 2013-Ohio-2163, 992 N.E.2d 1111, at ¶ 21. However, under the unique circumstances of this case, the trial court's narrow interpretation of the statute prematurely concluded this wrongful imprisonment matter. Finally, we note that C.K. still must prove all five prongs of the wrongful imprisonment statute, by a preponderance of evidence. If C.K. is able to demonstrate the fourth prong upon further proceedings, he still must prove the fifth prong. Because the trial court has not addressed the fifth prong, we do not reach that issue in this appeal.[3]

---

[3] Regarding the fifth prong, in *Doss, supra,* the Supreme Court of Ohio explained that "when a person claiming compensation for wrongful imprisonment has obtained a judgment of acquittal, that judgment is not to be given preclusive effect, because an acquittal is a determination that the state has not met its burden of proof. It is not necessarily a finding that the accused is innocent. For this reason, a claimant advancing a wrongful-imprisonment claim 'must affirmatively prove her innocence by a preponderance of the evidence.'" (Citation omitted.) *Doss* at ¶ 14. The court added that in enacting the statute, the General Assembly intended that the court of common pleas "actively separate those who were wrongfully imprisoned from those who have merely avoided criminal liability." (Citation omitted.) *Id.* When a defendant seeks a declaration that he is a wrongfully imprisoned individual and seeks to satisfy R.C. 2743.48(A)(5) by proving that an error in procedure resulted in his release, the error in procedure must have occurred subsequent to sentencing and during or subsequent to imprisonment. The latest wrongful imprisonment case from the Supreme Court of Ohio, *Mansaray v. State*, Slip Opinion No. 2014-Ohio-750, also concerned the fifth prong. The court held that when a claimant seeks to satisfy R.C. 2743.48(A)(5) by proving that an error in procedure resulted in his release, the error in procedure must have occurred subsequent to sentencing and during or subsequent to imprisonment. *Id.* at syllabus.

**{¶44}** For the foregoing reasons, the first assignment of error is sustained and the second assignment of error is overruled. This cause is reversed and remanded to the lower court for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

KATHLEEN ANN KEOUGH, P.J., and
MARY EILEEN KILBANE, J., CONCUR